[Crim. No. 34504. Second Dist., Div. One. Aug. 13, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
RUBEN G. TORRES, Defendant and Appellant.

**COUNSEL**

Walter R. Urban for Defendant and Appellant.

Quin Denver, State Public Defender, Jerry Smilowitz, Deputy State Public Defender, Wilbur F. Littlefield, Public Defender (Los Angeles), Dennis A. Fischer, Allan I. Kleinkopf, and James H. Barnes, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

John A. Vander Lans, City Prosecutor, Robert R. Recknagel, Assistant City Prosecutor, and Gerry L. Ensley, Deputy City Prosecutor, for Plaintiff and Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, John K. Van de Kamp, District Attorney, Harry B. Sondheim and

George M. Palmer, Deputy District Attorneys, Burt Pines, City Attorney (Los Angeles), George .C. Eskin, Chief Assistant City Attorney, Rand Schrader and S. Thomas Todd, Deputy City Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—This is an appeal from a municipal court conviction based upon a plea of guilty entered by Ruben G. Torres to a charge of indecent exposure (Pen. Code, § 314, subd. 1). ▮▮▮ Having granted certification from a decision of the appellate department of the superior court which reverses the judgment, we consider one narrow issue: the extent to which the docket entries of the municipal court accepting a plea to a misdemeanor in the absence of counsel must, in addition to recording advice of right to counsel and intelligent waiver of the right, also affirmatively state that the defendant was advised of the dangers and disadvantages of self-representation.

We conclude that while in some but not all misdemeanor charges an intelligent waiver of counsel requires advice from the court on the record of the danger of self-representation, the advice need not be memorialized in docket entries; a docket entry recording advice of right to counsel, the availability of publicly financed counsel to a defendant who is indigent, and intelligent waiver of the right is not fatally deficient. Accordingly, and because the procedural posture of the appeal at bar precludes examination of the record underlying the docket entry, we affirm the judgment, leaving Torres his right to pursue the matter if he wishes by way of proceedings in habeas corpus where an adequate record for review may be developed.

Torres was charged with lewd conduct in violation of subdivision 1 of Penal Code section 314. At arraignment, he waived his right to counsel and entered a plea of guilty. The municipal court sentenced him to six months in the county jail. Docket entries of the municipal court state that Torres was advised of his right to counsel at public expense and his other constitutional rights, and that he waived them. The docket also recites a trial court finding that the waiver was knowing and intelligent.

Torres filed a notice of appeal and proceeded by way of settled statement. The engrossed statement on appeal to which Torres interposed no objection denominates the issues on appeal as: (1) Torres' lack of

fluency in the English language precluded his intelligent understanding of the nature of the proceedings and the consequences of his plea; (2) the trial court failed to advise Torres that his plea might result in deportation proceedings and interfere with an effort to convert his alienage to citizenship; (3) Torres was not advised that the conviction resulting from his plea would require that he register as a sex offender; and (4) the trial court abused its discretion in imposing the maximum sentence. The factual portion of the engrossed statement refutes Torres' claims of lack of advice concerning the consequences of his plea to his alienage or liability to deportation. It does not support his contention of lack of fluency.

In his brief to the appellate department of the superior court, Torres preserved the issues recited in the engrossed statement and added another to the effect that his waiver of counsel was not a knowing and intelligent one. His contention as to the added issue is based upon a lack of advice of the collateral consequences of the plea. Torres' contention that the sentence is excessive is not supported by any argument at all.

The appellate department accepted Torres' contention contained in his added claim that his waiver of counsel was not an intelligent one. That court concluded that the docket entries in the case at bar are fatally defective for failure to include the statement that the defendant "was advised of the dangers and disadvantages of self-representation." Pursuant to rule 62(a), California Rules of Court, we granted certification, thus transferring the case to this court.

■ A person accused of a misdemeanor where imprisonment is the punishment is entitled to counsel as a constitutional right. (*Argersinger* v. *Hamlin* (1972) 407 U.S. 25 [32 L.Ed.2d 530, 92 S.Ct. 1178].) ■ The right attaches at the phase of the proceedings where a plea of guilty is entered. (*Williams* v. *Kaiser* (1945) 323 U.S. 471, 474-476 [89 L.Ed. 398, 401-403, 65 S.Ct. 363]; *In re Johnson* (1965) 62 Cal.2d 325, 329 [42 Cal.Rptr. 228, 398 P.2d 420]; *Blake* v. *Municipal Court* (1966) 242 Cal.App.2d 731, 733-735 [51 Cal.Rptr. 771] [one-day county jail sentence on plea of guilty to a traffic offense].) ■ A defendant may waive his right to counsel if the waiver is a knowing and intelligent one. (*People* v. *Floyd* (1970) 1 Cal.3d 694, 703 [83 Cal.Rptr. 608, 464 P.2d 64], cert. den. 406 U.S. 972 [32 L.Ed.2d 672, 92 S.Ct. 2418].) ■ A waiver of counsel where the charge is a serious one is knowing and intelligent only if preceded by an admonition that self-representation is perilous. (*People* v. *Fabricant* (1979) 91 Cal.App.3d 706, 712 [154 Cal.Rptr. 340].)

*In re Johnson, supra,* 62 Cal.2d 325, 336, delineates the procedure to be followed by an arraigning municipal court in accepting a waiver of counsel by a defendant charged with a misdemeanor. There our Supreme Court states: "We must recognize that the typically crowded arraignment calendars of our courts pose urgent problems in the administration of justice in California. This is particularly true of those courts in large municipalities which are called upon to deal with an unending stream of traffic violations, drunk cases, vagrancies, and similar petty offenses. While there can be no impairment of the fundamental constitutional rights of any defendant, however minor his crime, in certain situations there may be a choice of valid ways to implement these rights. Where such is the case—and constitutional rights are respected—the convenience of the parties and the court should be given considerable weight. For example, probably the vast majority of citizens haled into court on traffic violations share the judge's interest in prompt disposition of their cases, feeling themselves sufficiently inconvenienced by having to make personal appearances in the first place. To require the judge to orally examine each such defendant at length for the purpose of determining his capability of defending himself would seem to be an idle and time-wasting ritual. Compliance with the spirit of the constitutional mandate that an intelligent waiver of counsel must affirmatively appear in the record may be efficiently achieved in such cases in a variety of acceptable ways." (Fn. omitted.) *Johnson* continues, however, that where there is a potential seriousness of the charge then "the court should [make] a reasonable effort, before accepting [the accused's] plea[] of guilty, to determine whether he [understands] his predicament and [has intelligently waived his right to counsel]." (62 Cal.2d at p. 337.)

We construe *Johnson* as stating the controlling California law. Where the misdemeanor charged is simple and the exposure to punishment is slight then the arraigning judge may accept a waiver of counsel without first advising that self-representation is unwise. There are, after all, some offenses classified as misdemeanors that are so petty and simple in character that representation by counsel is not the wisest choice although it may be constitutionally permitted if the accused elects to act unwisely. As to those offenses, a warning of the right to counsel given to arraigned defendants *en masse* suffices. (See also *Blake* v. *Municipal Court, supra,* 242 Cal.App. 731, 733-734.) In the situation of serious or complex offenses, the admonition of the perils of self-representation must be given.

■ The charge in the case at bench qualifies as both serious and complex. Torres' plea of guilty to it resulted in his being sentenced to six months in jail and his being exposed to the requirement that he register as a sex offender. The legal interpretation of subdivision 1 of Penal Code section 314 is very much narrower than what the layman would read the statute to proscribe. (*In re Smith* (1972) 7 Cal.3d 362 [102 Cal.Rptr. 335, 497 P.2d 807].)[1]

If, therefore, the record on appeal of the case at bar compelled the conclusion that Torres was not advised of the dangers of self-representation, reversal of the judgment would be required. The record,

---

[1]The prosecution and amici curiae on its behalf paint a picture of fiscal disaster and administrative chaos unless this court adopts an all-encompassing principle to the effect that a trial court is never obligated at arraignment to advise a person accused on any misdemeanor of the hazards of self-representation. They would permit such advice if the arraigning judge thought it wise, but never require it.

Leaving aside the proposition that controlling case law emanating from the United States and California Supreme Courts mandates rejection of that position, it is in effect an insult to municipal court judges.

The misdemeanor arraignment process is not a job for an automaperson or for the unskillful judge; it calls upon the best of judicial performance. Judges arraigning persons charged with misdemeanors do not simply recite incantations of constitutional rights from a script as would a recording. They do not assess punishment upon a stream of people pleading guilty as would a checker total the tab at a supermarket. Arraigning judges of the municipal court represent a primary contact of the judicial system with the public and as such the exemplars of the California judiciary. They must work rapidly to apply individual treatment to individual accuseds by separating the individual's case from a vast mass of others, treating it for the moment as the most important one. Working in a volume-generated charged atmosphere, the arraignment judge must both do justice and insure the appearance that it is being done. The job requires a great deal of talent and application to do it right; as much talent and application as does the job of appellate judge in the opinion of we who have done both.

With exceptions far fewer than in most other walks of life, California municipal court judges conducting arraignments have exhibited the necessary high degree of talent and application. They have complied with *Johnson's* mandate of individualized treatment with respect to waivers of counsel in cases appropriate for it. We see not the slightest reason to suspect that their administration of misdemeanor arraignment courts will dissolve into chaos because those judges continue to apply constitutionally mandated principles.

The fiscal argument is similarly misplaced. Setting aside its gloss, the argument is, in effect, that if persons charged with a serious or complex misdemeanor are advised of the perils of self-representation, they will not waive counsel. The contention thus asks us to countenance, in the name of fiscal responsibility, a process which insures that some waivers of counsel will not be intelligently and knowingly made. It would substitute an incomplete ritualistic incantation for preservation of constitutional rights. If in fact there is an increased call upon the public fisc from following the law, it is unavoidable. It also seems recoupable, all or in substantial part, by the adoption in California of a management technique directly applicable to the arraignment process which has proved successful in Arizona. (See Eliot, *The Video Telephone in Criminal Justice: The Phoenix Project* (1978) 55 U.Det.J.Urb.L. 721.)

however, does not compel that conclusion. The case reached the reviewing courts upon an engrossed statement. Rule 184(a), California Rules of Court, which governs appeals to the appellate department, provides that if the condensed statement submitted by the appellant as the first step in the preparation of an engrossed statement purports to cover only a portion of the oral proceedings, the appellant shall state the points to be raised on appeal and shall be precluded from presenting any grounds for reversal not embraced within the points stated by him. Here the engrossed statement is sketchy. While covering the factual material involved in the "points on appeal" enunciated within it, it makes no reference to trial court proceedings related to waiver of counsel. While the record does not include Torres' condensed statement, we must assume, in light of his failure to object to the engrossed statement, that the latter's recitation of "points on appeal" is correct.

Hence, unless the failure of the docket entries of the arraigning municipal court to recite that Torres was advised of the perils of self-representation is fatal to the judgment of conviction based upon his plea of guilty, the judgment must be affirmed. Our analysis of controlling case law leads us to the conclusion that the absence of the docket entry is not fatal.

Counsel for the prosecution and for Torres both refer to a trial court admonition of the dangers and disadvantages of self-representation as a *"Faretta"* warning. In their assumption that the admonition is the creation of the *Faretta* court, they follow the lead of at least one California decision. (*People* v. *Lopez* (1977) 71 Cal.App.3d 568, 572 [138 Cal.Rptr. 36].) As we read the cases, the assumption is inaccurate. *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] declared only one new principle—that a defendant in a criminal case is guaranteed the right of self-representation by the United States Constitution so that a lawyer cannot be forced upon him. In explaining the quantum of that right and its relation to the subject of intelligent waiver of the obverse right to counsel, the *Faretta* court did say: "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " (422 U.S. at p. 835 [45 L.Ed.2d at pp. 581-582].) The *Faretta* court's acknowledgement of the requirement that a defendant must be possessed of sufficient information concerning the perils of self-representation when he elects that course was not new to *Faretta,*

however. It dates at least from *Adams* v. *U.S.* ex rel. *McCann* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 274-275, 63 S.Ct. 236, 143 A.L.R. 435]. We thus view the controlling law concerning the nature of the record to support the validity of a defendant's waiver of counsel as that which has developed in the 27 years since *Adams*. *Faretta's* revival of the *Adams* standard for intelligent waiver of counsel has emphasized the inappropriateness of a mini-bar examination as the test of capacity to waive counsel (see *People* v. *Shields* (1965) 232 Cal.App.2d 716, 722 [43 Cal.Rptr. 188]), but it has not changed the law governing the manner in which the process of intelligent waiver must appear in the record.

That law does not require that the *Adams* admonition appear in the docket. It may be memorialized at any place in the record of the proceedings. (*In re Johnson, supra,* 62 Cal.2d 325, 331.) ■ In an appropriate procedural posture, as in habeas corpus, the record may be amplified by extraneous evidence of what occurred. (*In re Johnson, supra,* 62 Cal.2d 325, 331; see also *In re Smiley* (1967) 66 Cal.2d 606, 617 [58 Cal.Rptr. 579, 427 P.2d 179]; but cf. *In re Hochberg* (1970) 2 Cal.3d 870, 876-879 [87 Cal.Rptr. 681, 471 P.2d 1].)

■ Here, because the appeal has proceeded on an engrossed statement in which the issue of intelligent waiver of counsel is not one of those preserved for appeal, we are unaware of the nature of proceedings in the trial court supporting the facially sufficient docket entry that Torres was advised of his right to counsel, at public expense if needed, that he waived that right, and that the waiver was knowing and intelligent. Torres, as the appellant, is obligated to supply us with a record adequate to decide the issues raised by him or to explain why such a record cannot be supplied. He has done neither. Efforts of both Torres and the prosecution to fill the gap in the record by declarations are unavailing. That documentation is beyond the record and, while it may be cognizable in a subsequent proceeding in habeas corpus, it is not part of the record on appeal.

Torres' other contentions being refuted or unsupported, we hence conclude that because of the nature of the record the judgment must be affirmed. Lest we establish a long standing principle which gives carte blanche to deviations from the procedural rules governing appeals,

Torres must be left with his remedy by extraordinary writ, a procedure which is not now before us.

The judgment is affirmed.

Lillie, Acting P. J., concurred.

HANSON, J.—I concur in the majority's judgment affirming the conviction of defendant Torres. However, I would arrive at that conclusion by a different route; I would elect to treat the within appeal as a writ of habeas corpus and directly address the key issue which has been completely briefed and argued by the parties and amici curiae.

The majority opinion in the instant case affirms the judgment of conviction on procedural grounds in a similar fashion as the majority opinion did in the Supreme Court case of *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859]. In *Pope* the dissenting opinion by Justice Mosk, concurred in by Justices Clark and Newman, expressed the view that the discussion in the majority opinion as to the appropriate standard for resolving claims of incompetence of trial counsel is dictum and has no binding effect. Similarly in the case at bench I construe the statement in the majority opinion that "the admonition of the perils of self-representation must be given" and the discussion supporting that conclusion as merely gratuitous dicta and not binding. However, since I disagree in a material part with that dicta, I feel compelled to document another line of reasoning supporting an opposite conclusion.

As indicated in the majority opinion defendant Ruben G. Torres (hereinafter defendant) in the municipal court pleaded guilty at the time of arraignment to lewdly exposing his private parts in a public place in violation of Penal Code section 314, subdivision 1 (hereinafter § 314.1).[1] He subsequently appealed to the appellate department of the superior court.

The appellate department of the superior court in a published opinion reversed the judgment of conviction with directions to the trial court to set aside the plea of guilty on the ground that the record on appeal did

[1]Section 314 provides in pertinent part as follows: "Every person who willfully and lewdly. . . .: [¶] . . . Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . is guilty of a misdemeanor. . . ."

not show a knowing, intelligent and voluntary waiver of counsel in that the "record must show that the defendant was advised of the dangers and disadvantages of self-representation" citing as authority *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].

Pursuant to rule 62(a) of the California Rules of Court we ordered that the cause be transferred to this court for hearing and decision.

This court pursuant to rule 7(a), California Rules of Court, permitted the parties and the amici curiae listed in the caption[2] of the majority opinion to completely brief and argue orally the controlling issue as to whether or not in a typical plea-of-guilty situation in the municipal court where the plea follows immediately on the heels of arraignment and where the defendant is not represented by counsel, an advisement of the dangers and pitfalls of self-representation must be made by the court and be shown in the record.

Stated another way the key issue as I perceive it is whether or not the record of a plea of guilty to a misdemeanor at the arraignment stage in the municipal court must show a *Faretta* type warning of the dangers and disadvantages of self-representation as an independent requirement or as an integral part of a showing of a "knowing, intelligent and voluntary waiver of counsel" OR whether or not the showing on the record of a "knowing, intelligent and voluntary waiver of counsel," as present here, is ineffectual absent also a showing on the record that a *Faretta* type warning was given.

It appears that the parties to this action in their briefs agree that *no* such warning was in fact given by the court below. Amplification of the record with "extraneous evidence of what occurred" by way of declarations which "may be cognizable in a subsequent proceeding in habeas corpus" would add nothing to clarify the key issue. There is as a practical matter no other "record underlying the docket entry" as to that issue. Accordingly, since we have before us in this appeal the essence of the same record which some other court down the road would have in addressing the same key issue if raised by the defendant seeking an extraordinary writ, as suggested by the majority opinion, in the interest of conservation of time, effort and public funds and to promote the efficient

[2]In addition to the city prosecutor's office of Long Beach and defense counsel, the officials of the following public agencies filed amici curiae briefs and argued orally before this court: City Attorney of Los Angeles, District Attorney of Los Angeles County, Attorney General of the State of California, the Public Defender of Los Angeles County and the State Public Defender.

and expeditious handling of criminal matters on appellate review we should, in my view, cut the Gordian knot here and treat the within appeal as a writ of habeas corpus.

In addressing the key issue described above, I conclude that there is presently no authority requiring that the judges handling the municipal court arraignment calendars must warn all or any of those defendants who wish to plead guilty to a misdemeanor charge at time of arraignment of the dangers and pitfalls of self-representation and that such warning must be shown on the record. Moreover, in the absence of a persuasive showing to the contrary, and none has been presented in this case, I do not believe that the further burdening of our already overburdened municipal courts with a judicially declared rule of criminal procedure requiring such a warning by the arraignment calendar judges would be in the best interest of the maintenance of an efficient and economical system of criminal justice. My reasoning follows:

THE RECORD IN THE CASE at BENCH

A more detailed recitation of the record in the instant case than that included in the majority opinion appears warranted.

The court docket dated June 6, 1978, pertaining specifically to defendant herein shows he pleaded guilty, as charged, to violating section 314.1 and also contains the following statements:

"Deft. expressly waived right to counsel after inquiry by the Court, the Court found that such waiver was knowingly, understandingly and intelligently made.

". . . . . . . . . . . . . . . . .

"Defendant/s in court without counsel for arraignment. Complaint read and defendant/s informed of legal rights, to-wit: counsel; time to procure counsel and that the court will appoint counsel without charges if defendant is unable to afford one; court process for witnesses; reasonable bail; time to plead; public trial in district of offense by judge or jury within 30 days if in custody, otherwise 45 days, or dismissal; time for sentence; dismissal under 1203.4A P.C. defendant/s expressly waive/s right to counsel, to a jury trial, to confrontation of accusers and all witnesses, and against self-incrimination. After inquiry by the court, the

court finds that such waivers are knowingly, understandingly, intelligently, and voluntarily made. The court further finds that the defendant/s understand/s the nature of the charge/s against him and the consequences of his guilty plea.

"Defendant/s enter/s plea/s of guilty as charged and waive/s time for sentence.

". . . . . . . . . . . . . . . . . .

"Request of defendant to file application for probation granted. Sentence and hearing on probation set for 7-18 1978. . . ."

The court docket dated July 18, 1978, shows the following entries: "Defendant in court and having been duly arraigned for judgment and there being no legal cause why judgment should not be pronounced, it is adjudged and ordered by the court that as a punishment for the said offense of 314.1 P C the defendant sentenced to serve 6 months in Los Angeles County."

The "Engrossed Statement on Appeal" dated September 16, 1978, certified as true and correct and signed by Judge Eugene T. Long who presided at the arraignment proceedings on June 6, 1978, contains, amongst other things, the following statements under the heading "Procedural Facts":

"On September 21, 1977, a complaint was filed alleging that Ruben Torres violated Penal Code Section 314.1.

"Defendant was arraigned on June 6, 1978. An interpreter was present at all times. Defendant was advised of his right to have counsel and if he could not afford counsel, one would be appointed. Defendant waived his right to counsel. Defendant was also advised concerning his status as an alien in conformance with Penal Code § 1016.5. Defendant was advised of his constitutional rights; and that he would be required to register under Penal Code § 290; as enumerated in the docket. Defendant entered a plea of guilty. Probation was requested and the case was continued to July 18, 1978 for sentencing.

"On July 18, 1978, the case was called for sentencing. An interpreter was present. Once again the court advised the Defendant pursuant to

Penal Code §1065.5. Defendant was sentenced to serve six (6) months in the county jail."

The record does not contain a reporter's transcript of the proceedings but none is required. "In California felony proceedings a court reporter must be present if requested by the defendant, the district attorney, or an order of the Court. (Code Civ. Proc., § 269.) However, in misdemeanor proceedings [as here] a court reporter is not required unless ordered by the court. (See Code Civ. Proc., § 274c.) ['T]he presence of an official court reporter in a criminal proceeding in the municipal court [as here] is dependent upon the discretion of the judge thereof.' (*Hidalgo* v. *Municipal Court supra*, 129 Cal.App.2d 244, 246 [277 P.2d 36].) . . . California provides an alternative method to the use of a reporter's transcript as a means of affording a review of a misdemeanor trial through the use of a settled statement. (Cal. Rules of Court, rules 184, 187.)" (*People* v. *Goudeau* (1970) 8 Cal.App.3d 275, 279-280 [87 Cal.Rptr. 424], ptn. for hg. den. July 22, 1970.)

NEITHER FARETTA NOR ITS CALIFORNIA PROGENY REQUIRES SUCH A WARNING AT THE PROCEDURAL STAGE OF THE INSTANT CASE

Defendant and counsel for amici curiae in support of their argument that the record must show that defendant was warned of the dangers and disadvantages of self-representation point to the language in *Faretta* v. *California, supra*, 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582], which states that: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. *Johnson* v. *Zerbst*, 304 U. S., at 464-465. Cf. *Von Moltke* v. *Gillies*, 332 U. S. 708, 723-724 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams* v. *United States ex rel. McCann*, 317 U.S., at 279."

I conclude, after a careful reading of the entire *Faretta* opinion, that neither it or any of its California progeny nor any other California case law presently known to me requires that a defendant who personally wishes to plead guilty at time of arraignment in the municipal court must

be warned by the court of the dangers and disadvantages of self-representation or that such warning must be shown on the record.

The *Faretta* case is clearly distinguishable from the case at bench by reason of the issues presented and its procedural posture. As indicated in the majority opinion, the *Faretta* court set forth the sole issue before it at page 807 [45 L.Ed.2d at page 566] when it said: "The question before us now is whether a defendant in a state *criminal trial* has a constitutional right to proceed *without counsel* when he voluntarily and intelligently elects to do so. Stated another way, *the question is whether a state may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense.*" (Italics added.)

In the present case, unlike *Faretta,* the municipal court did not try to "force a lawyer" upon defendant Torres. In *Faretta* the defendant pleaded *not guilty* to a felony charge, was faced with a full blown trial and had *initiated* a request to the court to represent himself during the course of the trial. In the case at bench, unlike *Faretta,* defendant Torres was not faced with an adversary criminal trial, did not enter a "not guilty" plea or intend to defend himself and did not *initiate* a request to·represent himself but to the contrary he merely wanted to, and did, plead *"guilty"* to a misdemeanor charge at time of arraignment in the municipal court.

Moreover, of particular significance is the fact that the language in the *Faretta* case pertaining to the advisement of "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open' " is really nothing new. As noted in the majority opinion, the *Faretta* court cites as authority for that language *Adams* v. *United States* ex rel. *McCann* (1942) 317 U.S. 269 [87 L.Ed. 268, 63 S.Ct. 236, 143 A.L.R. 435], which predates the California Supreme Court case of *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], by 27 years. I presume that our Supreme Court was aware of the *Adams* case when it handed down *In re Tahl* which held that *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], had only prospective application. In the instant case the record, *on its face,* clearly shows full compliance with *Boykin-Tahl* requirements which is all that is required.

The State Public Defender in its amici curiae brief urges this court to hold that even though a defendant is not faced with an adversary criminal trial that some kind of a warning of the dangers of self-representation by

the court is required even if a defendant desires to plead guilty, arguing that a lawyer at that stage *might* advise the defendant on such matters, for example, as the possibility of "diversion" out of the system, possible "technical" and affirmative defenses, and the possibility of a "negotiated plea." It is urged that this court should take *Boykin-Tahl* (*Boykin* v. *Alabama, supra,* 395 U.S. 238; *In re Tahl, supra,* 1 Cal.3d 122) one step further and require that a *Faretta* type warning be given by municipal court judges at the procedural stage of the case at bench to advise a defendant along the lines suggested in *People* v. *Lopez* (1977) 71 Cal.App.3d 568 [138 Cal.Rptr. 36], *People* v. *Dale* (1978) 78 Cal.App.3d 722 [144 Cal.Rptr. 338], and *People* v. *Cervantes* (1978) 87 Cal.App.3d 281 [150 Cal.Rptr. 819]. In the alternative it was urged in the briefs and at oral argument that even if the court only informed the defendant that his decision to plead without the advice of counsel is "unwise," it would at least be something, not suggested by *Boykin-Tahl,* which might prompt the defendant into thinking that he had best speak to an attorney before entering a guilty plea.

The *Lopez, Dale, Cervantes* and other cases construing *Faretta,* including *People* v. *Fabricant* (1979) 91 Cal.App.3d 706 [154 Cal.Rptr. 340], cited in the majority opinion, are all distinguishable since all involved the post-arraignment, nonplea stage of the proceedings. Each of the above cases implicitly recognizes that *Faretta* does not apply to a plea of guilty situation as present here because each discusses *Faretta* in terms of a defendant defending himself at a trial or other post-plea adversary hearing.

The dicta in the majority opinion pertaining to this issue primarily relying on its construction of *In re Johnson* (1965) 62 Cal.2d 325 [42 Cal.Rptr. 228], includes the statement that "In the situation of serious or complex offenses, the admonition of the perils of self-representation must be given," and "the charge in the case at bench qualifies as both serious and complex." I have no quarrel with *Johnson* but do not so construe its holding. The *Johnson* court merely held that "there is nothing in the record which remotely intimates that he [defendant] thereby made an *intelligent and understanding* waiver of his constitutional right to counsel" (62 Cal.2d at p. 334, original italics) and presuming waiver from a silent record is impermissible. Here, unlike the factual situation in *Johnson,* the record is not silent in respect to whether or not defendant Torres made a knowing, intelligent and voluntary waiver of counsel. The court docket dated June 6, 1978, clearly states: "Deft. expressly waived right to counsel

after inquiry by the Court, the Court found that such waiver was knowingly, understandingly and intelligently made."

Although the *Johnson* court does discuss crowded arraignment calendars and that in those misdemeanor charges which are complex and serious more care should be taken before accepting a waiver of counsel to insure that it was an intelligent and understanding waiver, there is no language whatsoever in *Johnson* which requires municipal courts to warn the defendant of the perils of self-representation and record such a warning before taking a guilty plea at time of arraignment.

Since such a warning is clearly not one which is constitutionally compelled and in the absence of clear judicial precedent to the contrary, I perceive no compelling reason to further smother and slow down our municipal courts with another judicially declared rule of criminal procedure which would require our municipal court judges taking misdemeanor guilty pleas at time of arraignment to give such a warning. I would decline to impose such a requirement and would leave such a determination to the state Supreme Court.

I by no means intend to imply that such a warning should never be given. I agree with the statement in footnote 1 of the majority opinion that "the misdemeanor arraignment process is not a job for an automa-person or for the unskillful judge," and "calls upon the best of judicial performance." I do not assume that our municipal court arraignment judges are stupid or unskillful. They have the nature of each charge and other factors at their fingertips and are vested with inherent powers to give such a warning on a case by case basis if they deem it advisable or appropriate. However, there is no showing whatsoever either generally or specifically in the case at bench that a departure from present procedures to make such a warning mandatory either as a blanket warning or as to any specific type of charge would be in the best interest of our criminal justice system.

In my view, a routine, uniform, blanket giving of such a warning is clearly not only unnecessary but would be unworkable in handling the mass arraignment calendars in our municipal courts. Those persons who plead guilty in the jammed arraignment courts are first given the required *Boykin-Tahl* advisements which include, as in the instant case, their legal rights to "counsel," time to procure counsel and that the court will appoint counsel without charge if defendant is unable to afford one. Thus, they are, as was defendant Torres in the case at bench, clearly

alerted to the availability of free legal counsel before entering a plea of guilty.

Such a clear pronouncement of the availability of *free counsel* at public expense COUPLED with a *blanket warning from the bench that it would be "unwise" to proceed to plead guilty without the aid of counsel* has a potential of wreaking havoc on California's municipal arraignment courts by reason of the sheer volume of cases. (See appen. A.) The disastrous domino effect of such a requirement upon the entire criminal justice system in the quest for "perfection,"[3] if "human nature" repeats itself,[4] could let another demon out of *Faretta's* Pandora's box.

[3]Justice Macklin Fleming in his book The Price of Perfect Justice—The Adverse Consequences of Current Legal Doctrine on the American Courtroom (Basic Books 1974) in the chapter entitled "The Ideal of Perfectibility" stated:

"The fuel that powers the modern theoretical legal engine is the ideal of perfectibility—the concept that with the expenditure of sufficient time, patience, energy, and money it is possible eventually to achieve perfect justice in all legal process. For the past twenty years this ideal has dominated legal thought, and the ideal has been widely translated into legal action. Yet a look at almost any specific area of the judicial process will disclose that the noble ideal has consistently spawned results that can only be described as pandemoniac. . . ." (P. 3.)

"The quest for perfection in procedure is comparable to the experience of a man who blows up an inner tube and tries to stuff it into a tire too small for the tube. Just as he gets one side in place, out pops the other. In our pursuit of the will-o'-the-wisp of perfectibility, we necessarily neglect other elements of an effective procedure, notably the resolution of controversies within a reasonable time, at a reasonable cost, with reasonable uniformity, and under settled rules of law.

"And here we confirm Macaulay's observation that a system which attempts too much achieves too little. For when we aim at perfect procedure, we impair the capacity of the legal order to achieve the basic values for which it was created, that is, to settle disputes promptly and peaceably, to restrain the strong, to protect the weak, and to conform the conduct of all to settled rules of law. If criminal procedure is unable promptly to convict the guilty and promptly to acquit the innocent of the specific accusations against them, and to do it in a manner that retains public confidence in the accuracy of its results, the deterrent effect of swift and certain punishment is lost, the feeling of just retribution disappears, and belief in the efficacy of the system of justice declines. . . ." (P. 6.)

"But, the perfectionists argue, no sacrifice is too great to assure that in a given case perfect justice will be done. Ignored is the sacrifice of the legal order itself and of the life, liberty, and property of those that the legal order is designated to protect . . . ." (P. 9.)

[4]California has an experience factor to look to by way of analogy. Indigents are afforded free appeals devoid of monetary incentive where nonindigent defendants must weigh such monetary incentives in deciding whether or not to retain counsel at personal as distinguished from public expense.

There is no reason to believe that "human nature" will not repeat itself as experienced by our appellate courts which are "flooded" with a large number of totally frivolous indigent felony appeals. (See *People* v. *Wong* (1979) 93 Cal.App.3d 151 [155 Cal.Rptr. 453], by Kingsley, J., Files, P. J., conc.)

The majority opinion in its footnote 1 states that "the fiscal argument is . . . misplaced." I concur with Presiding Justice Gordon L. Files in his concurring opinion in *Wong* when he stated at page 155 that "the economic cost of litigation is a significant factor in our justice system and we should not be reluctant to discuss it." Nor should we

## The Other Issues

The majority opinion summarily disposes of defendant's remaining contentions as being refuted or unsupported. I agree but feel some amplification is warranted.

Defendant's contention, through counsel, that he is fluent in Spanish only and lacks the requisite fluency of English and that it is "unlikely" that he understood what transpired is not supported by the record. The "Engrossed Statement on Appeal" shows that an interpreter was present at all times on June 6, 1978, at the time of the plea and on July 18, 1978, at time of sentencing. The trial court apparently believed an interpreter was unnecessary during its colloquy with defendant since the record is silent as to the use of an interpreter. Defendant did not at any time in the trial court seek to withdraw his plea based on the premises that he did not understand English. There is no indication in the record that the court below concluded that defendant was only fluent in Spanish and did not understand English. The probation report does not reflect an English

---

be reluctant to consider and weigh additional problems which may be caused in handling criminal matters by piling on judicially created procedural safeguard after procedural safeguard in the search for "perfection" which tends to foster loss of public confidence in our criminal justice system.

The primary purpose of our criminal justice system is, or should be, a search for the truth directed at a determination of the guilt or innocence of the accused. The system should also be conducted in an efficient and economical manner. In accordance with the foregoing, a sound public policy should be to encourage and not discourage pleas of guilty by the guilty.

In view of the foregoing, there appears to be an alternative simpler, faster and more economical way for a municipal court judge to handle guilty pleas at time of arraignment to those charges which may be classified as "serious and complex" than that indicated in either the dicta of the majority opinion herein or in the *Johnson* case. The judge, following a defendant's waiver of his constitutional rights and before accepting a guilty plea, could merely have defendant placed under oath and engage in a brief colloquy directly with defendant from the bench concerning defendant's conduct relative to the charged offense(s).* If the judge is satisfied after a brief colloquy with defendant of his guilt of the offense charged, the court accepts the plea. In most cases this method should short circuit the necessity of injecting defense counsel into the case at this stage and thus avoid both unnecessary delay and waste of private and public funds for legal assistance. In the event the court is not satisfied from defendant's statements as to his or her guilt of the charged offense, the court can then put the matter over for a short period and urge nonindigent defendants to consult with private counsel and refer indigent defendants to a public defender for consultation.

---

*Such a colloquy could start in this matter: THE COURT: Mr. or Mrs. ——, you have been charged with violation of Penal Code section ———. The Court understands that you wish to plead guilty to that charge. Is that correct? DEFENDANT: Yes. THE COURT: Tell the Court briefly in your own words what you did to violate that section of the Penal Code.

language problem and shows that defendant had come from Mexico to the United States in 1965 and has resided here for 13 years. Nor can the absence of a reporter's transcript supply a basis for this contention since the law provides that the use of a settled statement on appeal, as in the instant case, may be used in lieu of such a transcript. (See *infra.*)

The additional contention that defendant, an illegal alien who had previously been deported to Mexico, was not advised of the consequences of his plea in respect to possible attempts to achieve citizenship or deportation and possible registration as a sex offender is not supported by the record. Although the docket does not reflect such advisements, the "Engrossed Statement on Appeal" reflects that such advisements were in fact given. Moreover, assuming, arguendo, no such advisements were given, such errors call for reversal "only if [they are] prejudicial to the accused." (*In re Ronald E.* (1977) 19 Cal.3d 315, 321 [137 Cal.Rptr. 781, 562 P.2d 684].) There has been no showing that defendant was either deported as a direct result of his plea in the instant case or that he was required to register as a sex offender. The errors, if any, were therefore not prejudicial.

Finally, the court did not abuse its discretion in sentencing defendant. The record in the instant case including the trial court file reflects that defendant on August 8, 1977, drove his vehicle up to a female and exposed his erect penis to her without her consent; and that the victim obtained defendant's vehicle license number and positively identified him from a series of photographs. The probation report mentions defendant's prior conviction for the same offense and his incarceration of 30 days in jail for that offense and recommended "at least 60 days" in jail. The court's decision to deny probation and sentence defendant Torres to the statutory maximum is clearly within its discretion. (*People* v. *Giminez* (1975) 14 Cal.3d 68 [120 Cal.Rptr. 577, 534 P.2d 65].)

Accordingly, by reason of the foregoing I would affirm the judgment of conviction.

### *Appendix A*

The 1979 Annual Report of the Judicial Council of California to the Governor and the Legislature prepared by the Administrative Office of the California Courts (Jan. 1, 1979) throws light on the magnitude of the calendar case loads in California's 90 municipal courts. Figures 13, 14 and 15 at pages 96, 97 and 98 which graphically illustrate the large

percentage of guilty pleas entered by the municipal courts statewide under present procedures are attached as inclosures 1, 2 and 3, respectively.

An analysis of inclosures 1, 2 and 3 reflects during fiscal year 1977-1978 that 23,280 persons pleaded guilty in the municipal courts to felonies *including* those which were reduced to misdemeanors through Penal Code section 17, subdivision (b)(5); that 737,414 persons pleaded guilty to nontraffic and traffic misdemeanors which included such charges as battery (Pen. Code, § 242), disturbing the peace (Pen. Code, § 415), disorderly conduct (Pen. Code, § 647), joy riding (Pen. Code, § 499b), trespass (Pen. Code, § 602), violation of various city and county ordinances including intoxication and fish and game violations, hit and run, drunk driving, reckless driving with injuries and driving under the influence of drugs and other misdemeanor violations pertaining to the operation of vehicles. Another 655,956 persons pleaded guilty to non-traffic and traffic infractions which include such charges as speeding, improper operation of motor vehicles, faulty equipment and improper registration.

It is interesting to note that 183,555 misdemeanors, 2,766,696 nontraffic and traffic infractions and 7,043,962 illegal parking tickets were disposed of by bail forfeiture which, in certain instances involving Vehicle Code violations, are "considered equivalent to a plea of guilty for most purposes" (Judicial Council of Cal., Annual Rep., *supra,* p. 95) other than offenses relating to the unlawful parking of vehicles. (See Veh. Code, § 13103.)

Petitions for a rehearing were denied September 12, 1979. Hanson, J., was of the opinion that the petitions should be granted. The petitions of both parties for a hearing by the Supreme Court were denied October 11, 1979.

JUDICIAL COUNCIL OF CALIFORNIA

Figure 13—FELONY DISPOSITIONS IN LOWER COURTS *
Fiscal Year 1977-78

FELONIES

n = 73,331

[ Excludes felonies reduced to misdemeanors ]

FELONIES
REDUCED TO
MISDEMEANORS
through 17b(5) P.C.

n = 14,858

OTHER FELONIES
REDUCED TO
MISDEMEANORS

n = 3,557

---

* Percentages may not total 100% due to rounding. Cases transferred to another court are included with dismissals.

Inclosure 1

**36**

1979 ANNUAL REPORT OF THE ADMINISTRATIVE OFFICE

Figure 14—NONTRAFFIC DISPOSITIONS IN LOWER COURTS *
Fiscal Year 1977–78

**GROUP A MISDEMEANORS**

n = 339,822

Misdemeanor violations of Penal Code
and other state statutes except
intoxication and Fish and Game.
Examples:
Battery 242 PC
Disturbing Peace 415 PC
Disorderly Conduct 647 PC
Joy Ride 499b PC
Trespass 602 PC

**GROUP B MISDEMEANORS**

n = 195,956

Nontraffic misdemeanor violations
of city and county ordinance and
intoxication and Fish and Game
violations.

**NONTRAFFIC INFRACTIONS**

n = 43,632

Violations of city and county
ordinances specified as infractions

---

* Percentages may not total 100% due to rounding. Cases transferred to another court are included with Dismissals.

Inclosure 2

## JUDICIAL COUNCIL OF CALIFORNIA

Figure 15—TRAFFIC DISPOSITIONS IN LOWER COURTS *
Fiscal Year 1977–78

**GROUP C TRAFFIC MISDEMEANORS**

n = 222,427

Hit and Run
Drunk Driving
Reckless Driving—Injury
Driving Under Influence of Drugs

**GROUP D TRAFFIC MISDEMEANORS**

n = 401,196

Examples:
Speed contests
Driving without valid license
Violation of truck weight limit
Reckless driving without injury

**TRAFFIC INFRACTIONS**

n = 4,295,011

Examples:
Speeding
Improper operation
Faulty equipment
Improper registration

**ILLEGAL PARKING**

n = 8,096,508

* Percentages may not total 100% due to rounding. Cases transferred to another court are included with dismissals.

Inclosure 3