[Crim. No. 10568. Fourth Dist., Div. Two. Mar. 14, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED RAY BARLOW, Defendant and Appellant.

COUNSEL

Louis Steven Sanchez for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Lillian Lim Quon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McDANIEL, J.—In 'this case we are called upon to decide if the defendant was deprived of his constitutional rights when he was allowed to plead guilty without the assistance of counsel, the crux of that issue being whether defendant's waiver of his right to counsel occurred in keeping with acceptable constitutional standards where the trial court, in so many words, did not expressly warn the defendant of the dangers and disadvantages of self-representation.

By information filed July 22, 1976, defendant was charged with felony drunk driving. (Veh. Code, § 23101, subd. (a).) The record reflects that defendant drove his automobile across the center line and collided with an oncoming motorist. That motorist suffered a crushed kneecap which required its surgical removal. The record further reflects that defendant had a blood alcohol level of .22 at the time this grievous injury was inflicted.

Although we have no transcript of the preliminary hearing from which defendant was bound over for trial, the record otherwise indicates that defendant was represented by counsel at that preliminary hearing. However, when he appeared for arraignment on July 22, 1976, he was not represented by counsel. At that time he stated to the court that he

was "in the process of retaining an attorney...." Arraignment and plea were accordingly continued to August 5, 1976.

When defendant returned to court on that date, he stated for the record that he had been reviewing the terms of a prospective plea bargain with Mr. Ensign, the attorney who had represented him at the preliminary hearing. However, defendant asked for another continuance which was granted to September 2, 1976.

On that date the record reflects that the court recited an extensive admonition involving the constitutional rights of a person accused of a crime. This was done for the benefit of all defendants, including defendant, present that morning at the criminal, law and motion calendar. When defendant's case was called, he asked for another continuance, explaining that although he did not intend to retain counsel of record, he did need to consult further with Attorney Ensign concerning a plea bargain under negotiation between defendant and the district attorney's office. When the court questioned the defendant about the chances of having Mr. Ensign present at the time of entry of plea, the defendant stated, "It's really not necessary. I'm quite prepared to enter the plea after I speak with him." The court then granted another continuance, this time to September 8, 1976.

On that date, when the case was called, the deputy district attorney there representing the People moved to amend the information to add a second count charging defendant with a violation of Vehicle Code section 23104, reckless driving with injury, a lesser offense included within that originally charged. The court allowed the amendment.

An extended dialogue between the court and the defendant then ensued. Certain of this dialogue proceeded with reference to an anticipated plea of guilty to the lesser included offense, the outcome of the plea bargain. From this dialogue it appears that the bargain was to suspend sentence, place defendant on probation for three years and, as a condition thereof, to confine defendant to the county jail for thirty days. That these were the terms of the plea bargain is confirmed by the written guilty plea and its supporting recitations, a copy of which, together with the terms and conditions of probation, is attached as an appendix.

Because of the sole contention of defendant on this appeal, we find it necessary to set out verbatim certain portions of the dialogue between

the court and defendant. After the court authorized the amendment of the information, it asked:

"THE COURT: Mr. Barlow, do you understand what's happened?

"DEFENDANT BARLOW: Yes.

"THE COURT: You at one time had a lawyer in here, Mr. Ensign. Did you discuss the charge of 23104 with Mr. Ensign?

"DEFENDANT BARLOW: Yes, I did.

"THE COURT: And all of the elements of 23104?

"DEFENDANT BARLOW: Yes, I did.

"THE COURT: In other words, those components of the charge that the People would have to prove beyond a reasonable doubt to convict you?

"DEFENDANT BARLOW: Yes, I understand.

"THE COURT: I understand you are a law student?

"DEFENDANT BARLOW: That is correct.

"THE COURT: What year are you?

"DEFENDANT BARLOW: I'm a first year law student.

"THE COURT: You have had criminal law?

"DEFENDANT BARLOW: I've had eight years of experience as a criminal investigator.

"THE COURT: As what?

"DEFENDANT BARLOW: Of a criminal investigator.

"THE COURT: Have you had a course in criminal law?

"DEFENDANT BARLOW: Yes, I have.

"THE COURT: In law school?

"DEFENDANT BARLOW: No, sir. I've read the book.

"THE COURT: All right. Do you waive further reading of the Amended Information?

"DEFENDANT BARLOW: Yes, I do.

"THE COURT: You waive further advisement of rights?

"DEFENDANT BARLOW: Yes, I do.

"THE COURT: And specifically, do you waive your right to be arraigned formally on that Information?

"DEFENDANT BARLOW: Yes, I do.

"THE COURT: Do you want to enter a plea of guilty to reckless driving with injury?

"DEFENDANT BARLOW: That's correct.

"THE COURT: That's a misdemeanor and carries with it a possible sentence of 30 days to six months in jail and/or a $500 fine; is that your understanding?

"DEFENDANT BARLOW: The terms and conditions of the plea?

"THE COURT: Do you understand what the possible maximum sentence is?

"DEFENDANT BARLOW: Terms and conditions—my understanding is 30 days and no fine, just restitution for out-of-pocket—

"THE COURT: Do you understand Code Section 23104?

"DEFENDANT BARLOW: Yes, sir, I read that.

"THE COURT: And what the possible maximum sentence is?

"DEFENDANT BARLOW: Yes, your Honor.

"THE COURT: In your own words, what is the possible maximum sentence? That's what you're going to get if you violate probation. What is it?

"DEFENDANT BARLOW: Six months in jail and $500.

"THE COURT: Or both.

"DEFENDANT BARLOW: Or both.

"THE COURT: All right. And you understand that the Court follows the recommendation as contained in page 2 of this form that you could get exactly that to the extent that you don't get it as a condition of probation. In other words, if you get 30 days as a condition of probation, you've still got five months hanging over your head.

"DEFENDANT BARLOW: If I violate probation?

"THE COURT: Right. If you violate any of those terms and conditions of probation, you could go for another five months.

"DEFENDANT BARLOW: Yes, sir. I understand that.

"THE COURT: You've read and considered everything on this form—

"DEFENDANT BARLOW: Yes, your Honor.

"THE COURT: Plea form?

"DEFENDANT BARLOW: Yes, your Honor.

"THE COURT: Did you go over the recommendations with Mr. Ensign?

"DEFENDANT BARLOW: Yes, I did, your Honor.

"THE COURT: Do you feel you understand everything contained on these forms?

"DEFENDANT BARLOW: The only question I have is pursuant to the probation, Question 10, which asked for me to submit to the Orange

County Probation Department for psychiatric or psychological examination or something of that nature. I didn't quite understand that.

"THE COURT: That means if they tell you to cooperate in some psychological or psychiatric treatment or plan or program and you don't do it, you are in violation of probation.

"DEFENDANT BARLOW: I understand that.

"THE COURT: Any further questions about that particular condition?

"DEFENDANT BARLOW: No, sir, I do not.

"THE COURT: You understand that you have a right to be represented by an attorney at all stages of the proceedings?

"DEFENDANT BARLOW: Yes, I do.[1]

"THE COURT: You understand if you can't afford one, you'll receive one free of charge?

"DEFENDANT BARLOW: Yes.

"THE COURT: You understand that you have a right to trial by court or jury, whichever you wish?

"DEFENDANT BARLOW: Yes, Your Honor.

"THE COURT: Do you wish to waive your right to a jury trial?

"DEFENDANT BARLOW: Yes, your Honor, I do.

"THE COURT: Do you understand that you have a right to confront all of the witnesses that would necessarily have to be produced against you in order to convict you and you have a right to cross-examine those witnesses personally or through your own attorney if you have one; do you understand that?

---

[1] Six days before, on September 2, 1976, as earlier noted in this opinion, the defendant stated with reference to having an attorney, "It's really not necessary. I'm quite prepared to enter the plea after I speak with him [Attorney Ensign]."

"DEFENDANT BARLOW: Yes, I do.

"THE COURT: Do you wish to waive that right?

"DEFENDANT BARLOW: Yes, I do.

"THE COURT: You have a privilege against self-incrimination. You understand that by pleading guilty you are incriminating yourself totally to the charge proscribed in the California Vehicle Code Section 23104?

"DEFENDANT BARLOW: Yes, I do, your Honor.

"THE COURT: You wish to give up that right?

"DEFENDANT BARLOW: Yes, I do."

The court then accepted defendant's plea of guilty to the lesser offense, expressly finding in connection therewith that defendant's waiver of his rights as specified on the guilty plea form had been made "knowingly and intelligently."

Beginning October 3, 1976, the defendant served his 30 days. Thereafter, on December 15, 1978, over two years later, defendant was arrested in Los Angeles and charged with violation of Vehicle Code section 23102, subdivision (a), misdemeanor drunk driving, first offense. He had a blood alcohol level of .12 at that time. Defendant was again able to negotiate a highly favorable plea bargain under which he pled guilty only to reckless driving, for which he was fined and placed on probation for three years.

Defendant was then cited in Orange County for violation of his probation there. After a full hearing of the petition for arraignment on probation violation, the court on April 11, 1979, found that the terms of probation had been violated. However, probation was reinstated on condition that defendant serve an additional 60 days. Probation was accepted, and the defendant appealed. Execution of the terms of probation were stayed, and defendant remains at large after posting $1,000 bail.

The notice of appeal recites only that the defendant "appeals from the judgment rendered against him in the above entitled action." Neces-

sarily this "judgment" is the order of April 11, 1979, which placed defendant on probation a second time. There was never any appeal from the order of September 8, 1976, under which defendant was first placed on probation.

## ISSUES AND DISCUSSION

Defendant makes no reference whatsoever to the procedural chronology and posture of the case as it presently stands, and makes only one assignment of error. That claim of error is in the form of *a collateral attack on the probation order of September 8, 1976*. That order was made after acceptance of defendant's plea of guilty and after the court had made a specific finding, in the language of the minute order, that "defendant intelligently waived his legal and constitutional rights"[2] while appearing without counsel at the time his guilty plea was received. The defendant contends as to this event in the proceedings that "[t]he trial court erred by failing to adequately warn the defendant of the risk and pitfalls involved in self representation," citing *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], and our own case of *People* v. *Lopez* (1977) 71 Cal.App.3d 568 [138 Cal.Rptr. 36]. More particularly, the defendant in restating the issue asks, "did the Court adequately warn the Defendant of the dangers and disadvantages of self representation pursuant to the guidelines" required by *Faretta* and *Lopez*?

Before considering this assignment of error, we first question whether this attempted collateral attack on the judgment is timely. The order of September 8, 1976, was an appealable order (Pen. Code, § 1237),[3] and all matters going to the validity of the proceeding which resulted in that conviction would have been raised in an appeal from that order. However, no appeal was taken from the order noted; as a consequence, under the general rule, defendant would be precluded from raising on this appeal any supposed errors occurring before the original conviction. (*People* v. *Valdez* (1967) 251 Cal.App.2d 573, 574 [59 Cal.Rptr. 627].) Stated in terms of the procedural events of the case before us, we observe that although an appeal may lie from the subsequent order of

---

[2]In the reporter's transcript as already noted, the language of the trial court was that "[t]he Court finds there's a factual basis and the waivers of the rights contained on the form [see Appendix], the plea form, were made knowingly and intelligently."

[3]Such order was appealable provided there was compliance with Penal Code section 1237.5 which requires a certificate of probable cause where the conviction or order granting probation is based on a plea of guilty as it was here.

April 11, 1979, which found probation to have been violated and which then placed defendant on probation again, the matters arising before pronouncement of the judgment of September 8, 1979, cannot thereby be reviewed. (*People* v. *Howerton* (1953) 40 Cal.2d 217, 220 [253 P.2d 8].)

However, some cases have recognized an exception to this rule where the error later assigned embraces a claim of unconstitutional deprivation underlying the original judgment. (*People* v. *Munoz* (1975) 51 Cal.App.3d 559, 563 [124 Cal.Rptr. 322].) The court in *Munoz*, writing in 1975, said "[b]ecause appellant had the right to appeal at that time and raise all matters going to the validity of his 1971 conviction, and because he failed to do so, he now cannot raise on this appeal claims of error occurring in the criminal trial, with the exception of the constitutional argument that he did not receive adequate representation by counsel. [Citing *People* v. *Glaser* (1965) 238 Cal.App.2d 819, 821-824 (48 Cal.Rptr. 427).]" (*Id.* at p. 563.)

In *Glaser*, the procedural posture of the case was the same as here except that conviction was after a *contested* trial. Defendant, after conviction, was placed on probation with sentence suspended. He then violated his probation which was revoked, and defendant was sentenced to state prison. He then appealed and attempted to attack the initial judgment of conviction on the basis of claimed errors occurring at his trial. The court noted the general rule which would foreclose such collateral attack, but then observed, "[d]efendant's failure to establish that his appeal as a matter of course encompasses a review of all matters leading to his conviction does not relieve this court of the obligation to consider those alleged errors which may be raised at any time because they involve violations of fundamental constitutional rights. 'Fundamental jurisdictional defects, like constitutional defects, do not become irremediable when a judgment of conviction becomes final, even after affirmance on appeal...' [Quoting from *In re Winchester* (1960) 53 Cal.2d 528, 531-532 (2 Cal.Rptr. 296, 348 P.2d 904).]" (*People* v. *Glaser, supra*, 238 Cal.App.2d 819, 824.)

*Winchester* involved an effort by *petition for writ of habeas corpus* sought long after a criminal judgment of conviction became final to make a collateral attack on the judgment. In this effort it was urged that the judgment had been obtained in violation of fundamental constitutional rights. Immediately after the quote above cited, the *Winchester* court said, with reference to the burden on the defendant in making

such a collateral attack, "[h]owever, the petitioner must show that the defect so fatally infected the regularity of the trial and conviction as to violate the fundamental aspects of fairness and result in a miscarriage of justice. [Citation.]' (*In re Winchester, supra,* 53 Cal.2d 528, 531-532.)

Thus, it is apparent that in those cases allowing such collateral attacks there has been a metamorphosis of procedure from writ to appeal with no explanation of why and with no clear signal at the time the line was crossed. In other words, as a matter of the evolution of precedent, there is no question but that the rationale of the exception noted in *Munoz* and *Glaser* derived from the right to a writ of habeas corpus to redress constitutional infirmities in criminal trials. Thus, the current authorities permitting these latter-day collateral attacks on final judgments by means of appeal, where the assigned error is some constitutional defect in the underlying judgment, spring from *Winchester* which rightly involved the remedy of habeas corpus.

The implication of the history and origin of this new procedural posture is significant. While not overly concerned with form, we should not, however, allow that form to obscure substance and thus alter the nature of the inquiry at our level. The task of a petitioner for a writ of habeas corpus we perceive as different from that of an appealing defendant, given the same complaint of unconstitutional deprivation underlying the conviction. We take our cue from the *Winchester* language which requires the petitioner to show "that the defect so fatally infected the regularity of the trial and conviction as to violate the fundamental aspects of fairness and result in a miscarriage of justice." (*Id.* at p. 532.) By this we mean to say that the writ procedure contemplates a hearing on factual issues which presents us with findings to weigh against the evidence. On a direct and timely appeal under Penal Code section 1237, where the so-called *Faretta* issue is raised, we can only measure the raw record against the constitutional standard.

Accordingly, even if a defendant, under current authorities, would have standing on this procedural record to launch his latter-day collateral attack on the order of September 8, 1976, (e.g., see *People v. Munoz, supra,* 51 Cal.App.3d 559, 563, and *People v. Bautista* (1970) 6 Cal.App.3d 344, 351-352 [85 Cal.Rptr. 688]), he must keep in mind the legal origin of this opportunity and be aware that, in our consideration of such attack, it will be necessary for us, before we can rule in

his favor, to conclude that, in urging his contention, he has made a case which surmounts the *Winchester* test.

Moreover, before turning to the merits of the assignment of error, we must note another procedural aspect of this case. In footnote 3, *ante*, reference was made to Penal Code section 1237.5. Had defendant within in 60 days of the order of September 8, 1976, decided to appeal and to raise the so-called *Faretta* issue, he could not have done so, because of his guilty plea, without first obtaining a certificate of probable cause as required by that section. We find it remarkable that he assumes, without even discussing the point, that he can now, perhaps by reason of the passage of time, have acquired some sort of exemption from compliance with section 1237.5 and rule 31(d), California Rules of Court.

We read nothing in the section which would have prevented the defendant from applying for such a certificate before processing this appeal, given the procedural state of the law as apparently now sanctioned by *Munoz* and *Bautista*. However, defendant chose not to do so, and so strictly viewed we see no reason to accord him any different treatment now than the statute would have commanded had he attempted to appeal without a certificate of probable cause back in 1976.

The route chosen by the defendant here is similar to that attempted by the defendant in *People* v. *Nigro* (1974) 39 Cal.App.3d 506 [114 Cal.Rptr. 213]. In *Nigro*, defendant pleaded nolo contendere and was placed on probation. He then moved to set aside his plea. An evidentiary hearing was then conducted for 24 days which amassed over 1,000 pages of transcript. Nevertheless, the court denied the motion to withdraw the plea and also refused defendant's request for a certificate of probable cause. The court then made an order modifying the terms of probation, following which the defendant appealed. However, he thereby sought solely a review of the order denying his motions for withdrawal of plea and for a certificate of probable cause. Similarly here, defendant appealed from the *new* probation order, but seeks only to review a matter preceding the *original* order.

In *Nigro*, the court made short shrift of such an effort stating, "Penal Code section 1237 [fn. omitted] specifies what appeals may be taken by a defendant. An order by which the trial court refuses to issue a certificate of probable cause may technically be one made after judgment but to permit an appeal therefrom would render Penal Code section 1237.5 meaningless. That section is designed to prevent 'frivolous appeals' by

requiring the trial court to rule on the issue of probable cause. The proper remedy to review the propriety of the trial court's ruling is by way of a timely petition for mandate. [Citation.]" (*Id.* at pp. 510-511.) The court proceeded to dismiss the appeal and treat the matter as a petition for writ of mandate in order to reach the merits of the defendant's contention.

In a sense, the technique used in *Nigro* suggests a possible approach for reaching the merits here. However, a substantial distinction obtains. In *Nigro*, the issues raised and considered by treating the appeal as a petition for writ of mandate had been raised in the trial court. Those issues were the defendant's right to withdraw his plea and to obtain a certificate of probable cause. In the case before us no such motions were made to the trial court. Neither was any procedural step taken at the violation hearing to challenge the underlying validity of the order of September 8, 1976. In other words, the so-called *Faretta* issue is being raised for the first time on appeal in connection with this collateral attack on the judgment.

Citing Witkin, "an appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 276, p. 4264.) Thus even if defendant had come before us with a petition for habeas corpus we could have insisted that he have first filed in the superior court, or have referred the factual issues to a special master. Nevertheless, there are exceptions to this rule of review where an important question involving the due administration of justice is involved. (Cf. *Hager* v. *Hager* (1959) 174 Cal.App.2d 546, 550 [345 P.2d 68].) ■ Accordingly because we do have the complete record before us, including the trial court's finding that defendant's waiver of his constitutional rights was "made knowingly and intelligently," we shall, in the interest of conservation of time, and to promote the efficient and expeditious handling of criminal matters on appellate review, treat this appeal as a petition for writ of habeas corpus. (See *People* v. *Torres* (1979) 96 Cal.App.3d 14, 24-25 [157 Cal.Rptr. 560].)

■ We now return to defendant's contention that the court erred by failing adequately to warn the defendant of the risk and pitfalls involved in self-representation, or, as otherwise questioned by defendant in his brief, "did the Court adequately warn the Defendant of the dan-

gers and disadvantages of self representation pursuant to the guidelines setforth [*sic*] in *Faretta* vs. *California* (1975) 422 U.S. 806 and as adopted and discussed in *People* vs. *Lopez* (1977) 71 Cal.App.3d 568."

This imports the subject of the so-called *Faretta* "warnings" which, as defendant recites, were discussed in *Lopez*. True, *Lopez* did discuss in detail the three areas to be explored by the trial court when a defendant expresses a choice or preference to represent himself, one such area being that involving the defendant's awareness of the dangers and disadvantages of self-representation. However, what followed in *Lopez* by way of the nature and extent of the inquiries and recitations to be made was pure dicta and was expressly characterized as a suggestion and not as an inflexible requirement. More particularly, the court said, "[f]irst it is necessary, as *Faretta* says that the defendant 'be made aware of the dangers and disadvantages of self-representation.' Under this category we *suggest* that..." (*People* v. *Lopez, supra*, 71 Cal. App.3d 568, 572, italics added.)

From the *Lopez* language, it is at once apparent, if the suggestions are followed, that there is scant chance of error in allowing a defendant thereafter to proceed without counsel. However, *that is not the issue here*. Parenthetically, we note that the actual holding in *Lopez* was that "the record [did] not adequately establish that the defendant made a knowing and intelligent election of self-representation." (*Id.* at p. 571.) Defendant does not contend here that the record does not adequately establish that the defendant made a knowing and intelligent election of self-representation; rather his stated grievance is that the trial court erred by failing adequately to warn the defendant of the risk and pitfalls, i.e., dangers and disadvantages, involved in self-representation.

Defendant is accurate in his representation of the record in this respect; the court at no time actually "warned" the defendant of any dangers or disadvantages of self-representation. As we read the cases, the attempt to characterize as error the failure to warn in such exact language begs the question. The real task which confronts the trial court, when a defendant insists on proceeding without counsel, is to do whatever the circumstances then and there require to satisfy itself that the defendant in so doing has made a knowing and intelligent election. If we can demonstrate that this is the proper scope of the trial court's responsibility at such a juncture in the proceedings, then we will have demonstrated that the assignment of error as urged by defendant is really no issue at all, and, as noted, begs the real question.

Turning to an analysis of the precedential origins of the judicial responsibility here under scrutiny, we see the need for a return to basics so to speak. What is it that *Faretta* decided?

The *actual* and *only* issue decided by *Faretta* was that the defendant had a constitutional right to act as his own counsel in a criminal case. If there is any question about this, we quote the language: "In forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." (*Faretta v. California, supra*, 422 U.S. 806, 836 [45 L.Ed.2d 562, 582].) We repeat, that is all that *Faretta* decided. This view of the holding in *Faretta* is confirmed by Justice Thompson, who, writing in *People v. Torres, supra*, 96 Cal. App.3d 14, said that *Faretta* "declared only one new principle— that a defendant in a criminal case is guaranteed the right of self-representation by the United States Constitution so that a lawyer cannot be forced upon him." (*Id.* at p. 21.)

In the course of the majority opinion in *Faretta*, there were, however, certain cautionary statements made wherein it was observed that "in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits. [Citing *Johnson v. Zerbst* (1938) 304 U.S. 458, 464-465 (82 L.Ed. 1461, 1466-1467, 58 S.Ct. 1019, 146 A.L.R. 357).]" The *Faretta* opinion then went on to say that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that...'he knows what he is doing and his choice is made with eyes open.' [Citing *Adams v. U.S.* ex rel. *McCann* (1942) 317 U.S. 269, 279 (87 L.Ed. 268, 274, 63 S.Ct. 236, 143 A.L.R. 435).]" (*Faretta v. California, supra*, 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582].)

We have no quarrel with the concepts embodied in this *Faretta* language, but we do not translate the validity of such concepts into a rote requirement of just how the trial court should proceed in making the determination contemplated by this language. In this vein, the implication of the manner in which the assignment of error is phrased would have us apply these *Faretta* dicta in a kind of "knee-jerk" reaction fashion, i.e., we are asked to rule that there was an unconstitutional deprivation per se unless the record shows that the trial court mouthed

the exact words necessary to embody the warning above quoted. We find no authority for any such limited and question-begging proposition.

The cases call for something different which involves not a proof of a negative but a search for an affirmative. This is borne out by our decision in *Lopez*. In *Lopez*, there was *no inquiry of any kind* made by the trial court with reference to the defendant's election to go ahead without counsel at a critical stage of the proceedings. On the record, we did not see it as error that there was a failure to warn, but rather that there had not been a knowing and intelligent election of self-representation. (*People* v. *Lopez, supra,* 71 Cal.App.3d 568, 571.)

That this was the guidance for later cases intended by the *Faretta* language above quoted is demonstrated by the cases it cited in two instances. In *Johnson,*[4] the defendant had represented himself in defending a charge of passing counterfeit currency. After his conviction, his case finally moved to the United States Supreme Court on a petition for writ of habeas corpus urging that he had been denied his Sixth Amendment right to counsel. The district court upon being presented with the petition ruled that "proceedings depriving petitioner of his constitutional right to assistance of counsel were not sufficient 'to make the trial void and justify its annulment in a habeas corpus proceeding, but that they constituted trial errors or irregularities which could only be corrected on appeal.'" (*Johnson* v. *Zerbst, supra,* 304 U.S. 458, 459 [82 L.Ed. 1461, 1464].) The circuit court of appeals affirmed, and certiorari was granted by the United States Supreme Court. As a consequence, the issue in *Johnson* was whether a claim of unconstitutional deprivation of counsel, because there had not been a knowing and intelligent waiver, could be reached by collateral attack on the judgment *via habeas corpus.*

It was in this context that the court discussed the question of how it could be determined if there had been an intelligent waiver of the right to counsel. In this connection, it observed that such determination, "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (*Id.* at p. 464 [82 L.Ed. at p. 1466].) Later on, the court said, "[i]f the accused, however, is not represented by counsel

---

[4]The *Faretta* language already quoted, which relies by citation on *Johnson,* reads "in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits." (422 U.S. 806, 835 [45 L.Ed.2d 562, 581].)

and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty." (*Id.* at p. 468 [82 L.Ed. at p. 1468].) After extended analysis of the nature of the right to counsel and what is necessary for the record to show to justify a finding of intelligent waiver, the court remanded the case to the trial court and stated, "[i]f—on remand—the District Court finds from all of the evidence that petitioner has sustained the burden of proof resting upon him and that he did not competently and intelligently waive his right to counsel, it will follow that the trial court did not have jurisdiction to proceed to judgment and conviction of petitioner, and he will therefore be entitled to have his petition granted. *If petitioner fails to sustain this burden, he is not entitled to the writ.*" (*Id.* at p. 469 [82 L.Ed. at p. 1469], italics added.)

The critical language initially quoted from *Faretta* involving the suggestion that the defendant be made aware of the dangers and disadvantages of self representation relied upon certain language from *Adams* v. *U.S.* ex rel. *McCann, supra*, 317 U.S. 269. *Adams*[5] was also a case deriving from a petition for habeas corpus, this time to the circuit court of appeals. The defendant McCann had been charged, tried and convicted of six counts of mail fraud. At his trial he had refused the aid of counsel stating, because the case was very complicated, that he would be better able to defend himself without an attorney. He then waived a trial by jury.

The issue before the circuit court of appeals was characterized thusly, "[h]as an accused, who is without counsel, the power at his own instance to surrender his right of trial by jury when indicted for felony?" (*Id.* at p. 272 [87 L.Ed. at p. 271].) In the course of addressing this issue, the court also discussed collaterally the necessity of having a lawyer available to guide the choice of whether to waive a jury trial. It was in this context that the matter of waiving the right to counsel was discussed, and there the *Adams* court stated, "[b]ut the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel *if he knows what he is doing and*

---

[5]The *Faretta* language already quoted, which relies by citation on *Adams*, reads, "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" (422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582].)

*his choice is made with eyes open.* [Citing *Johnson* v. *Zerbst, supra,* 304 U.S. 458, 468-469 (82 L.Ed. 1461, 1468-1469).]" (*Adams* v. *U.S. ex rel. McCann, supra,* 317 U.S. 269, 279 [87 L.Ed. 268, 275].)

On the merits of the issue before the United States Supreme Court in *Adams* it reversed the circuit court of appeals and remanded the case for a factual inquiry into whether the defendant's waiver of counsel had been freely and intelligently made. In other words, the United States Supreme Court rejected the notion that per se a criminal defendant had been deprived of his right to a jury trial just because he had made this choice without benefit of counsel. In this regard the court said, "[i]f the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality. Simply because a result that was insistently invited, namely, a verdict by a court without a jury, disappointed the hopes of the accused, ought not to be sufficient for rejecting it. And if the record before us does not show an intelligent and competent waiver of the right to the assistance of counsel by a defendant who demanded again and again that the judge try him, and who in his persistence of such a choice knew what he was about, it would be difficult to conceive of a set of circumstances in which there was such a free choice by a self-determining individual." (*Id.* at p. 281 [87 L.Ed. at p. 276].)

Here again *People* v. *Torres, supra,* 96 Cal.App.3d 14 is instructive. There it is said that the *Faretta* court's acknowledgement of the requirement that a defendant "must be possessed of sufficient information concerning the perils of self-representation when he elects that course was not new to *Faretta*, however. It dates at least from *Adams*...We thus view the controlling law concerning the nature of the record to support the validity of a defendant's waiver of counsel as that which has developed in the 27 years since *Adams.*" (*Id.* at pp. 21-22.) More importantly, *Torres* continues, "[t]hat law does not require that the *Adams* admonition appear in the docket. It may be memorialized at any place in the record of the proceedings. [Citing *In re Johnson* (1965) 62 Cal.2d 325, 331 (42 Cal.Rptr. 228, 398 P.2d 420).]" (*Id.* at p. 22.)

The *Adams* admonition? This admonition is not that the trial court mouth some particular warnings to the defendant. It is rather an admonition by the United States Supreme Court to trial courts that a

defendant "may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." (*Adams* v. *U.S.* ex. rel. *McCann, supra*, 317 U.S. 269, 279 [87 L.Ed. 268, 275].) In other words, the *Faretta* admonition per *Torres* is in reality the *Adams* admonition, and so it is a distortion of precedent to cite *Faretta* for the proposition that it *requires* the trial court to mouth any particular warnings.

We have gone to some lengths to dig into the true decisional origins of the *Faretta* dicta because of the way in which the assignment of error has been fashioned, i.e., that it is error not to warn in some particular way. The results of that digging, as above recorded, we repeat, leave no doubt whatsoever that the judicial task of the trial court here prescribed is not some mindless mouthing of a rote incantation but instead is a pragmatic search within the unique framework of the given case for that point where it clearly appears to the trial court that the defendant has in the language of *Lopez* made "a knowing and intelligent election....." (*People* v. *Lopez, supra*, 71 Cal.App.3d 568, 571.)

Thus, as observed at the outset of our analysis of *Faretta*, while it is true that in *Lopez* by way of dicta we sought to provide certain guidance for future cases in the form of what course of inquiry might be pursued in search of the answer to the ultimate question, such guidance by no means was intended to cast in concrete the requirement that the trial court use such language in every case or suffer the pain of a brand of reversible error. The pronouncements of the United States Supreme Court cases cited in the *Faretta* dicta make clear that each case sets the course of such inquiry and, of equal importance, that in any collateral attack on the judgment the burden is on the defendant to demonstrate unconstitutional deprivation.

That is right; in any collateral attack on the judgment the burden is on the *defendant* to demonstrate unconstitutional deprivation. In the portion of this opinion discussing the procedural posture of the case, we traced *Munoz* and *Glaser* back to *Winchester* which expressly stated the burden was on the defendant to show some defect in his conviction so fatally infectious as to violate the fundamental aspects of fairness and result in a miscarriage of justice. This was a general observation referable to any kind of a constitutional defect. With particular reference to the acceptable waiver of counsel as defined by *Adams* and *Johnson*, which are the unmistakable origins of the critical *Faretta* language, it is also expressly stated that the burden of demonstrating constitutional in-

firmity is on the defendant. The *Johnson* language, already quoted is succinct and unequivocal, reciting "[i]f petitioner fails to sustain this burden, he is not entitled to the writ." (*Johnson v. Zerbst, supra,* 304 U.S. 458, 469 [82 L.Ed. 1461, 1469].) Similarly in *Adams,* the court said, "[i]f the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality." (*Adams v. U.S.* ex rel. *McCann, supra,* 317 U.S. 269, 281 [87 L.Ed. 268, 276].)

With the framework for decision thus erected, and the burden allocated to the defendant as the *Winchester* test, we consider whether the defendant on September 8, 1976, at the time he entered his guilty plea made a knowing and intelligent waiver of the right to counsel. That is the issue. Placing what happened against the framework noted, it becomes obvious that this is not even a close case. Actually, defendant was only without counsel in a very limited sense. The record reflects that defendant was accorded repeated opportunities to consult with Attorney Ensign concerning the details of a plea bargain which was going down.

Otherwise, reference is made to those portions of the reporter's transcript, earlier quoted, which indicate the care which the trial court gave to making certain that the defendant knew exactly the consequences of what he was doing. Rather than representing error, that scenario instead appears to us to be a model of enlightened concern for the defendant's constitutional rights.

Going back to *Lopez,* if the suggestions therein set forth are followed, there is little doubt but what a knowing and intelligent waiver will be achieved, and we do not here retract those suggestions. However, in the case now before us, the defendant is claiming an unconstitutional deprivation based solely on the absence of some supposed critical words. It is this narrow and ritualistic view of *Faretta* which we have sought to discredit.

Thus, in terms of the true issue here presented as defined for *Faretta* by *Adams* and *Johnson* and as recognized in *Lopez,* the record is clear that the defendant has not carried his burden, for the evidence is susceptible of only one interpretation and that is that the defendant did knowingly and intelligently make an election of self-representation. By

a process of elimination then we conclude that there could hardly have been error arising because of any failure to warn the defendant of the particular risk and pitfalls present in self-representation.

This brings us to a discussion of *People* v. *Fabricant* (1979) 91 Cal.App.3d 706 [154 Cal.Rptr. 340], cited by defendant as supportive of his contention. That case involved a direct and *timely appeal* from a judgment of conviction. Before judgment, the defendant had made a motion to dismiss under section 995 of the Penal Code, contending that he had been unlawfully bound over to the superior court because the magistrate had failed to comply with section 859 of the Penal Code which requires that the magistrate inform the defendant of his right to counsel. In dealing with this assignment of error, on the basis of the docket sheet, the court concluded that there had been no failure to comply with the statute. However, the court noted that the defendant had failed to provide transcripts of the oral proceedings before the magistrate, and, although it could not presume error in the absence of a complete record, the court nevertheless reversed, because it opined that the burden was on the People to establish beyond a reasonable doubt that the defendant was aware of the perils of self representation and the People had failed to carry that burden.

In the course of the opinion the court, with reference to the foregoing summary said, "[a]lthough defendant bears the burden of furnishing a record which shows that the section 995 motion was erroneously denied, the burden is on the People to show that defendant was '...made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [Citation.]'" (*Id.* at p. 712.) For this proposition the *Fabricant* court cited *Faretta*.

This shows how far the misconception of *Faretta* has evolved as a result of what we have characterized earlier as a "knee-jerk" reaction to its dicta traceable to *Johnson* and *Adams*. In our analysis of the precedents, we have demonstrated not only that the *Faretta* dicta does *not* require that defendant be made aware of the dangers of self-representation by means of any particular warnings, but also that it most certainly does not deal in any manner whatsoever with fixing any burden on the prosecution to demonstrate a knowing and intelligent waiver of the right to counsel. As already noted, *Faretta*, in the area of this dicta, cites *Adams* where the "eyes open" language appears, and *Adams* in turn cites *Johnson*. *Johnson* explicitly states that "[w]here a defendant,

without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus*, the burden of proof rests upon [the defendant] to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel." (*Johnson* v. *Zerbst, supra*, 304 U.S. 458, 468-469 [82 L.Ed. 1461, 1468-1469].)

The *Fabricant* court after attributing to *Faretta* that the burden as noted is on the *People*, then proceeds to pursue a discussion of the kind of *warnings* which *Faretta* requires. (*People* v. *Frabricant, supra*, 91 Cal.App.3d 706, 712.) As we have stated, *Faretta*, fairly analyzed, does not require any kind of warning. Moreover, as also demonstrated in the foregoing, the burden is most assuredly not upon the People to demonstrate a knowing and intelligent waiver of counsel, at least where the issue arises by way of collateral attack on the judgment. The burden is on the defendant to show that there was not.

As observed, *Fabricant* involved a direct and timely appeal; here we are dealing with a collateral attack on the judgment through the office of a petition for writ of habeas corpus. We see no logical reason why the burden should be different because of the different procedure, especially if the trial court, where a direct and timely appeal is taken, has actually made a finding of knowing and intelligent waiver. Surely the burden, as a matter of the fundamental rules of appellate review, should be on the appealing defendant. In any case, where the *Faretta* dicta purport to be the authority for fixing the burden on the People, the proposition must fail, for *Faretta's* underpinnings are *Adams* and *Johnson* which expressly fix the burden on the defendant.

Editorializing aside, we hold, applying the *Winchester* test, that the defendant has failed to demonstrate that the trial court's finding that he knowingly and intelligently waived his right to counsel was unsupported by the record, and that hence defendant failed to show the presence of a defect which so fatally infected the regularity of the proceedings as to violate the fundamental aspects of fairness and result in a miscarriage of justice.

Accordingly, in terms of the defendant's assignment of error, the trial court did not err in "failing to adequately warn the defendant of the risk and pitfalls involved in self representation" where the record otherwise demonstrated that there was substantial evidence to support its

finding that defendant's waiver of his right to counsel was "made knowingly and intelligently."

## DISPOSITION

The appeal is dismissed because it is both untimely and not in compliance with Penal Code section 1237.5. What we have deemed a petition for writ of habeas corpus is denied.

Gardner, P. J., and Morris, J., concurred.

## APPENDIX

**FILED**

SEP 10 1976

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ORANGE

WILL_____ _____ County Clerk
By_____

PEOPLE vs. _Fred Ray Barlow_

### GUILTY PLEA IN THE SUPERIOR COURT

My full name is _Fred Ray Barlow_ . I am represented by _____ who is my attorney.

I understand that I am charged with the offense(s) of _23104 CVC_ offense carrying a possible penalty of _30 days_ to _6 months_ years imprisonment in the penitentiary, alleged in County ____ of the pleading. _to jail and/or P.S.C._

_I also waive my right to an attorney_

I understand that I have the right to be represented by an attorney at all stages of the proceedings until the case is terminated and that if I cannot afford an attorney, one will be appointed free of charge.

I understand that I have a right to a speedy and public trial either by jury or by court. I hereby waive and give up this right.

I understand that I have the right to be confronted by the witness(es) against me and to cross examine them myself or through an attorney. I hereby give up this right.

I understand that I have the right to testify on my own behalf but that I cannot be compelled to be a witness against myself, and may remain silent if I so choose. I hereby give up these rights.

I understand I have the right to call witnesses to testify in my behalf and to invoke the compulsory process of the court to subpoena those witnesses. I hereby give up these rights.

I understand that I have the right to reject Probation and I hereby give up and waive that right and accept Probation on all the terms and conditions contained in Page 1 and 2 of this form.

I understand that under the Fourth and Fourteenth Amendments of the U.S. Constitution, I have a right to be free from unreasonable searches and seizures, and I hereby give up and waive that right, and request to be sentenced in accordance with Page 1 and 2 of this form.

My lawyer has told me that If I plead guilty to the above charge(s), the District Attorney will recommend to the Court the following:

(a) State Prison for the term prescribed by law which term is ____ to ____ years imprisonment in the penitentiary. I waive my right to make application for probation and request immediate sentence.

(b) That I make an application for probation which will be considered by the Court before sentence is pronounced. I understand the Court may send me to state prison from ____ to ____ years. _grant S.S._

ⓒ Probation under the conditions set forth in page two (attached) that I have signed and initialed. I understand that a violation of probation may cause the Court to send me to the penitentiary for 30 days to _6_ years on this case. No other promises have been made to me and no threats have been made to me or anyone close to me. _months you are_

(d) Commitment to CYA ☐ 1203.03 PC Commitment ☐ Institution of MDSO ☐ CRC Proceedings ☐

(e) Other _____
Disposition of other cases _____

I have discussed the charge(s), the facts and the possible defenses with my attorney.

I offer my plea of "Guilty" freely and voluntarily and of my accord and with full understanding of all the matters set forth in the pleading and in this waiver.

I offer to the Court the following facts as the basis for my plea of guilty _On about 5/31/76, in the County of Orange, I drove a vehicle on the roadway in a reckless manner & caused injury to Craig Chambers_

I have personally initialed each of the above boxes and I understand each and every one of the rights outlined above and I hereby waive and give up each of them in order to enter my plea to the above charge(s). I am entering a plea of guilty because I am in fact guilty and for no other reason.

DATED: _9-8-76_ SIGNED: _Fred Ray Barlow_ DEFENDANT

DEFENDANT'S ATTORNEY ONLY: I am attorney of record and I have explained each of the above rights to the defendant, and having explored the facts with him/her and studied his/her possible defenses to the charge(s), I concur in his/her decision to waive the above rights and to enter a plea of guilty. I further stipulate that this document may be received by the court as evidence of defendant's intelligent waiver of these rights and that it shall be filed by the clerk as a permanent record to that waiver.

DATED: _____ SIGNED: _____ ATTORNEY

FOR THE PEOPLE: DATE: _9-8-76_ DEPUTY DISTRICT ATTORNEY _____
(After reading, initialing, and signing, give to courtroom clerk).

–1–

10

12-412.1

FILE COPY

APPENDIX

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ORANGE

_C-269_ PEOPLE vs. _Fred Ray Barlow_

PROBATION/SENTENCING (SUPERIOR COURT)

☒ State prison for the term prescribed by law Execution suspended. Placed on probation for _____ years.

☒ Imposition of sentence suspended; Placed on probation for _3_ years

☒ Sentenced to the County jail for _____ . Execution suspended. Placed on probation for _____ years.

TERMS AND CONDITIONS OF PROBATION

☒ Supervised ☐ Probation Department relieved of supervision.

☒ Spend _30 days_ in County jail. Stay granted until _6 pm; 9/29/76_

☒ Pay fine of $ _____ + P.A. to the County Clerk on or before _____

☒ Make full restitution in amounts and manner as determined by Probation Officer. _for victim's out-of-pocket expenses not covered by the insurance -_

☒ Register pursuant to Section 11590 of Health & Safety Code.

☒ Submit to drug or narcotic testing program as directed by Probation or Police Officer.

☒ Submit your person and property, including any residence, premise, container or vehicle under your control to search and seizure at any time of the day or night by any police or probation officer with or without a warrant.

☒ Cooperate with probation officer in plan for psychological or psychiatric treatment.
Other: _____

☒ Not own, use or possess any type of dangerous or deadly weapon.

☒ Obey all laws, orders, rules and regulations of the Probation Department, Court and Jail.

☒ Violate no law.

☒ Register pursuant to Section 290 of the Penal Code.

☒ Not to be in the presence of minor children under the age of 18 unless in presence of responsible adults over 21 years of age unless approved by probation officer.

☒ Have no blank checks in possession, not write any portion of any checks, not have checking account nor use or possess credit cards or open credit accounts unless approved by probation.

☒ Seek training, schooling or employment and maintain residence as approved by probation dept.

☒ Not operate motor vehicle without valid California drivers license.

☒ Other conditions: _Not to drive a motor vehicle with a discernable amount of alcohol in your blood -_

I have read and agree to all the conditions of probation I have initialed above.

Dated: _9-8-76_     _Fred Ray Barlow_
                     DEFENDANT

32-413.1

FILE COPY