[Crim. No. 14554. Fourth Dist., Div. Two. Oct. 22, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ELI K. MELLOR, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Parts II, III and IV are not published; they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

COUNSEL

Wallace B. Farrell for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney, Steven H. Zeigen and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McDANIEL, J.—One of the assignments of error in this case is an example of why we feel compelled to call attention to our holding in *People* v. *Barlow* (1980) 103 Cal.App.3d 351 [163 Cal.Rptr. 664], pointing out that when a defendant insists on proceeding without counsel, the task which confronts the trial court is *not* to make the defendant aware of the dangers of self-representation by means of any particular so-called "*Faretta*" warnings, but "to do whatever the circumstances then and there require to satisfy itself that the defendant in so doing has made a knowing and intelligent election" (*id.,* at p. 365).

After a jury trial, Eli K. Mellor (defendant) was convicted of grand theft (Pen. Code, § 487, subd. 1) and, during the commission of the offense, of intentionally taking property, the loss of which exceeded $100,000 (Pen. Code, § 12022.6, subd. (b)). Defendant represented himself at all stages of the proceedings in the trial court.

On appeal, defendant is represented by an appointed attorney, and contends: (1) the record does not reveal a knowledgeable and intelligent waiver of counsel; (2) the trial court erred in denying his motion for a continuance; (3) the trial court improperly commented on his right to represent himself; (4) there were errors in the jury instructions; (5) as a partner, he cannot be convicted of embezzling assets from the partnership; and (6) there was insufficient evidence to support the finding that the loss of the property taken exceeded $100,000. Only the discussion of contentions (1), (5) and (6) is appropriate for publication. See footnote 1, *ante.*

FACTS

AKOP, Inc. (AKOP), a Panama corporation, invested $150,000 in a limited partnership called Devore Ranches, whose purpose was to develop real property. Defendant, the developer and sole general partner of Devore

Ranches, used about $119,000 of AKOP's funds for political purposes. Defendant told AKOP's attorney that he, defendant, had taken the money, and said he would do anything he could to repay it. Defendant and his wife signed a promissory note in favor of AKOP and Devore Ranches for about $123,000. The note was secured by a deed of trust which named AKOP as beneficiary. Defendant also signed a letter of understanding drafted by AKOP's attorney. The letter of understanding provided that defendant had "diverted approximately $119,000 from the partnership for [his] own use," and proposed various real estate projects, which defendant could develop as a means of repaying the funds owed to AKOP. None of the projects was successful, and AKOP did not recover any of its original investment.

DISCUSSION

I

DEFENDANT'S WAIVER OF COUNSEL

Before the preliminary hearing, defendant was asked by the magistrate if he had been warned "thoroughly" about representing himself. He responded, "Your Honor, on three different occasions, I believe, by the court on previous occasions, as well as by counsel." Defendant then reserved the right to select counsel at a later time. The court asked, "You understand you have the right to have an attorney whether or not you can afford one?" Defendant answered, "Yes, I understand." The court then warned defendant specifically about the rules of evidence, and defendant said, "Your Honor, I'm familiar with those and many more, and I'm familiar with the risk of proceeding pro per." Defendant again reserved his right to select counsel at a later time, and the court said, "All right."

At the preliminary hearing, defendant was informed by a different magistrate that he had a right to an appointed attorney; that it was "probably unwise" for him to act as his own attorney; that "attorneys normally felt if they got in trouble they would be better off having another person represent them"; that a superior court judge might not make allowances for the fact that he was not an attorney, and that the prosecutor had been an attorney for many years and was under no duty to give him any special "breaks" because he was representing himself. Defendant said that he understood. The court inquired about defendant's educational background, and asked him if he had any questions about the elements of the offense. Defendant said he did not, but that he had a question or two about the purpose of the preliminary hearing. The court explained the function of the hearing to defendant and defendant said he understood. The court told defendant, if the case reached the superior court, that he could always obtain an attorney

at that point. Defendant said he understood. The court asked defendant if he still wanted to represent himself; defendant said, "I do," and the court said, "Okay."

At the end of the preliminary hearing, the court said to defendant: "you basically start from scratch in the Superior Court. . . . I really would urge you to ask the Court at that time to appoint the Public Defender for you. I don't see that it could hurt you. You certainly may be a man with the absolute best of intentions right now, but this is a serious charge and I would really urge you to get an attorney."

In the superior court, the judge who accepted defendant's plea announced the dates for the various pretrial proceedings and asked defendant if he understood what the proceedings meant. Defendant said he did. The court said: "You are expected to comply, then, with all the rules of court, rules of procedure, rules of evidence." Defendant said, "Thank you, your Honor." The minute order for the entry of plea proceedings recites: "Court Grants defendant Pro Per Status."

At the beginning of trial, the court told the jury that defendant would "be held to the same standards as an attorney would be. He has been forewarned of that fact."

█ Defendant now contends that the record does not reveal that he made a knowing and intelligent waiver of counsel, *because he was not given the specific "Faretta" warnings "require[d]" by this court's opinion in People* v. *Lopez* (1977) 71 Cal.App.3d 568 [138 Cal.Rptr. 36]. This contention is palpably without merit, if not ludicrous, in view of our holding in *Barlow*, and flies in the face of the record as recounted above.

In *Barlow* we analyzed in considerable detail the precedential origins of the judicial vigilance called for when a defendant elects to represent himself, and were at pains to point out that the burden imposed on trial courts by *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] and its progeny in these circumstances "is *not* some mindless mouthing of a rote incantation but instead is a pragmatic search within the unique framework of the given case for that point when it clearly appears to the trial court that the defendant has . . . made 'a knowing and intelligent election.'" *(People* v. *Barlow, supra,* 103 Cal.App.3d 351, 370, italics added.)

Earlier, in *Lopez,* we had stated that the recommended warnings in that case were "but suggestions," that we did not attempt to establish any "minimum requirements," and that "it is rather obvious that an adequate inquiry be made *in order for the reviewing court to ascertain that the defendant has*

*knowingly and intelligently elected to represent himself."* (*People* v. *Lopez, supra,* 71 Cal.App.3d 568, 574, italics added.) In any event, *Lopez* does *not* require any particular inquiries or pronouncements by the trial court.

Here, an "adequate" inquiry was conducted by two different courts, as revealed in the record described above. As noted, defendant told the first court that he was familiar with the rules of evidence and with the rules of proceeding in propria persona, and defendant told the second court that he understood the specific risks outlined by the court. Defendant's present attempt to define the generalized inquiry which *is* required, in terms of specific warnings which are *not* required, was expressly condemned in *Barlow* as a gross misconception of the applicable law.

Defendant also contends that he should have been advised *at the beginning of trial* as to his right to counsel, and that a waiver should have appeared on the record at that time. However, such an advisement and waiver "may be memorialized at any place in the record of the proceedings." (*People* v. *Torres* (1976) 96 Cal.App.3d 14, 22 [157 Cal.Rptr. 560].) Defendant relies on cases where the defendants were initially represented by counsel and pleaded not guilty, then later appeared in court without counsel and withdrew their not guilty pleas and pleaded guilty. The reviewing courts held, under those circumstances, that findings that the defendants waived their rights to counsel must be expressly made by the trial judges at the time of the guilty pleas. In those cases, however, *there were no waivers in the record,* because the defendants had been represented by counsel until the time their pleas were entered. In this case, defendant was not represented by counsel at *any* stage of the trial proceedings, and expressly waived his right to counsel at least twice before trial. To require an additional waiver at the outset of trial would be a time-consuming and meaningless gesture, and to raise an argument that there should have been an additional waiver is specious, if not a wilful misrepresentation of the law.

■ As we stated in *Barlow,* the burden is on the *defendant* to prove that he did not intelligently and knowingly waive his right to counsel. (*People* v. *Barlow, supra,* 103 Cal.App.3d 351, 373.) Defendant has not even remotely carried that burden here. Otherwise, let there be no more palaver from defense counsel in the form of assigning error because there were no "*Faretta*" warnings.

What follows hereafter until part V, does not warrant publication, and accordingly it will not be published. However part V and part VI will be published.

V

## THE LIABILITY OF A PARTNER FOR EMBEZZLING PARTNERSHIP ASSETS

■ Relying on *People* v. *Foss* (1936) 7 Cal.2d 669 [62 P.2d 372], defendant contends, as a partner, that he cannot be convicted of embezzling partnership assets. In *Foss*, where the defendant had been convicted of grand theft, our Supreme Court made the unsupported statement that "The rule that a partner cannot steal from the partnership is, of course, well settled." (*Id.*, at p. 670.) Because the conviction in *Foss* was upheld on the theory that the defendant was an agent, not a partner, later courts characterized the *Foss* "rule" as dictum and held that "a partner may indeed embezzle from partnership funds." (*People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 468 [106 Cal.Rptr. 519, 82 A.L.R.3d 804]; see also *People* v. *Pedersen* (1978) 86 Cal.App.3d 987, 992-993 [150 Cal.Rptr. 577].)

Defendant concedes that *Sobiek* is against him, but argues, without citing any authority, that *Foss* should control "as a pronouncement of the highest court." However, the issue was analyzed at great length in *Sobiek*, and defendant has given us no reason to differ from what was said in that case.

VI

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE ENHANCEMENT

■ Penal Code section 12022.6 provides in relevant part: "Any person who *takes*, damages or destroys any property in the commission or attempted commission of a felony, with the intent to cause such taking, damage or destruction, and the *loss* exceeds: . . . (b) One hundred thousand dollars ($100,000) the court shall in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted impose an additional term of two years." (Italics added.)

Defendant contends that there was insufficient evidence to support the jury's finding that AKOP's "loss" was over $100,000. In support of this contention, defendant argues that after the taking he transferred his interest in various items of real and personal property to AKOP, thus reducing the debt of approximately $119,000 to less than $100,000. However, "[t]he word 'loss,' as used in section 12022.6 in the context of the *taking* of property, . . . includes any dispossession which constitutes theft of the victim's property." (*People* v. *Bates* (1980) 113 Cal.App.3d 481, 484 [169 Cal.Rptr. 853], italics in original.) "The statute does not on its face require the intent to permanently deprive the owner of property, but rather that the

property be intentionally rather than accidentally taken." (*People* v. *Kellett* (1982) 134 Cal.App.3d 949, 959 [185 Cal.Rptr. 1].)

Further, AKOP's agent testified at trial that defendant did not assign *any* property to AKOP, that he "attempted to, but was not able to." The agent was asked, "As a bottom line, did you [AKOP] ever get any money back?" He said, "No." In view of the above, defendant's contention as to the sufficiency of the evidence is without merit.

Defendant argues additionally, because he had a 50 percent interest in the partnership funds, that he could not have embezzled more than $75,000 (50 percent of AKOP's $150,000 investment). This argument is answered in *People* v. *Sobiek, supra,* 30 Cal.App.3d 458, 467-468.)

Moreover, despite defendant's claim to the contrary at oral argument, there is abundant evidence in the record that the taking was from AKOP, rather than from the partnership. For example: the information alleges that defendant unlawfully took "the personal property of *AKOP Inc.*" and its agent, and that the loss was in excess of $100,000 (italics added); the letter of understanding recites that *AKOP* is to receive "a return of capital invested" plus interest; defendant granted *AKOP* a security interest in his property, and defendant's disclosure statement in bankruptcy court recites in pertinent part: "In June 1980 [defendant] entered into an agreement [the letter of understanding] with its major creditor, *AKOP, Inc.* The agreement transferred title to certain properties, *AKOP* preferred, assuming a certain creditor posture in [defendant's] financial affairs. Both parties were willing and agreeable to work together to repay an indebtedness by [defendant] to *AKOP, Inc.* of $123,248." (Italics added.)

### DISPOSITION

The judgment is affirmed.

Kaufman, Acting P. J., and Rickles, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 2, 1985.