Filed 4/4/17

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. B265958 |
| Plaintiff and Respondent, | (Super. Ct. No. 1473654) |
| | (Santa Barbara County) |
| v. | |
| ROBERT LEE BILLIE, | |
| Defendant and Appellant. | |

A defendant has a constitutional right to represent himself at trial. (*Faretta v. California* (1975) 422 U.S. 806, 819; *People v. Welch* (1999) 20 Cal.4th 701, 729.) The trial court has a concomitant duty to ensure that the proceedings are conducted in an orderly fashion and, upon a proper showing, to physically restrain the defendant for his own safety and that of others in the courtroom. (*People v. Combs* (2004) 34 Cal.4th 821, 837-838.) Inevitably, use of physical restraints will impair the self-

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

represented defendant's ability to move around the courtroom. It also is difficult to conceal the restraints from the jury's view. Here the trial court conscientiously sought to balance the defendant's right to self-representation with its concern for the safety of the defendant, deputies, jurors and others in the courtroom. We believe the court properly struck that balance.

Appellant Robert Lee Billie was charged with attempted murder (Pen. Code, §§ 664, 187, subd. (a)),[1] with special allegations of personal infliction of great bodily injury (§ 12022.7, subd. (a)), and personal use of a deadly weapon (§ 12022, subd. (b)(1); count 1); and assault with personal use of a deadly weapon (§ 245, subd. (a)(1)), with the special allegation of personal infliction of great bodily injury (§ 12022.7, subd. (a); count 2). The charges resulted from events occurring on May 16, 2013.

Both counts alleged that the offenses were second strikes (§§ 667, subds. (d)(2) & (e)(1), 1192.7, subd. (c)(8)), that appellant had suffered a prior conviction of a serious felony (§ 667, subd. (a)(1)), and that he had served a prior prison term (§ 667.5, subd. (b)). It also was alleged that appellant was ineligible to serve a state prison sentence in county jail because the alleged offenses were serious or violent felonies (§§ 1192.7, subd. (c), 667.5).

Appellant represented himself at trial, assisted by advisory counsel. He elected to bifurcate trial on the current alleged offenses from the trial on an alleged prior strike conviction and to waive jury trial on the alleged prior conviction.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

The jury deadlocked on count 1 and the trial court declared a mistrial on that count. The jury found appellant guilty of count 2 and found true the special allegation. The prosecution dismissed count 1.

The trial court found the prior conviction true as alleged. It sentenced appellant to the upper term of four years in state prison on count 2, doubled to eight years as a second strike under section 667, subdivision (e)(1). The court sentenced appellant to a consecutive three-year term for the enhancement under section 12022.7, subdivision (a), and a five-year consecutive term pursuant to section 667, subdivision (a)(1), for a total term of 16 years. Appellant was awarded 531 days of presentence custody credit.

Appellant contends the trial court erred by requiring him to wear restraints during trial and by admitting evidence of his prior assault conviction. We affirm.

FACTS

Appellant and the victim, William Littrice, had known each other for years. They met while working for Second Chance, an organization that takes employees by van to different cities to sell candy door-to-door. A crew of 10 to 14 people, working on commission, go out for approximately two weeks at a time. Appellant and Littrice sometimes worked together on these crews. Littrice knew appellant by the name Robert Goodman.

In January 2013, appellant, Littrice and Roderick Van Tyree (Tyree) were selling candy in San Luis Obispo. Appellant and Littrice had a dispute, during which appellant attacked and repeatedly struck Littrice with a bottle wrapped in cloth. During the fight, Littrice allegedly swung a knife at appellant, cutting him in the abdomen.

On May 16, 2013, appellant was again working with a crew from Second Chance in the Santa Barbara area. The crew was comprised of Melody Moore, appellant and several others. Littrice and Tyree also were working in the same area, but not with Second Chance. Both crews were staying at the Motel 6 in Carpinteria.

While Moore was speaking with Littrice at the motel, she saw appellant walking towards them. Littrice thought appellant said, "What up, Blood?" Moore heard, "What up, motherfucker?" or "What up, nigger?" Tyree saw appellant push Moore into Littrice and then strike him in the neck area. Tyree thought appellant had hit Littrice with his fist until he saw appellant pull away with a "knife or something" in his hand. Tyree saw blood flowing from Littrice's neck, and realized Littrice had been hit with a weapon.

Moore saw the knife after it came out of Littrice's neck. The blade was silver and about five inches long. When blood started gushing from the wound, Moore ran to tell her husband. As appellant walked away, he told Moore's husband to mind his own business or he would kick his ass.

Tyree brought Littrice to their room, put a towel on his neck and called the police and an ambulance. When Santa Barbara Deputy Sheriff Bradley Bordon arrived, he found Littrice bleeding from the neck. Paramedics took Littrice to the hospital, where it was determined the wound was not life-threatening.

Bordon interviewed Littrice at the hospital. Littrice told him that "Robert Goodman" had stabbed him and that there had been a previous altercation between them at another motel.

4

An arrest warrant issued, but it took police nearly one year to arrest appellant.

## DISCUSSION

### *Use of Restraints During Trial*

Appellant contends the trial court violated his "fair trial" and "due process" rights when it ordered him to wear restraints during the trial. We disagree.

"[A] criminal defendant may be subjected to physical restraints in the jury's presence upon 'a showing of a manifest need for such restraints.' [Citations.] This requirement is satisfied by evidence that the defendant has threatened jail deputies, possessed weapons in custody, threatened or assaulted other inmates, and/or engaged in violent outbursts in court. [Citations.]" (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1031-1032 (*Lewis*).) Although the trial court's decision to restrain a defendant must be based on more than rumor or innuendo, a formal evidentiary hearing is not required. (*Ibid.*) "A shackling decision will be upheld absent a manifest abuse of discretion. [Citation.]" (*Ibid.*)

Appellant has not demonstrated any abuse of discretion, let alone a manifest abuse. As the People point out, appellant's history of violence in response to disputes with others is well documented. While on the Navajo Reservation in Arizona in 2004, appellant stabbed an acquaintance, puncturing his lung. Appellant pled guilty to the charge and was sentenced to federal prison. While serving that sentence, he committed numerous disciplinary offenses, including attacks on fellow inmates.

While appellant was incarcerated in the county jail awaiting trial in this case, jail personnel documented several

5

disciplinary violations. These included possession of razor blades and assaults on fellow inmates, including his own cellmate.

After considering this history, the trial court found "there's been a showing of manifest need" for restraints, including leg shackles and the handcuffing of one hand. This finding is supported by the evidence. (See, e.g., *People v. Wallace* (2008) 44 Cal.4th 1032, 1050 [use of concealed leg shackles justified for defendant cited for engaging in jailhouse fights and possessing illegal razors]; *Lewis, supra,* 39 Cal.4th at p. 1032 [no abuse of discretion in shackling defendant who attacked other inmates].)

The trial court imposed the least intrusive means of restraint to accomplish its goal of maintaining courtroom safety. Appellant was allowed to keep one hand free for note-taking and to dress in civilian clothes throughout the trial. Because appellant's shackles required him to remain seated at counsel's table, the prosecutor volunteered to remain seated during trial as well. And because appellant was unable to approach the bench for sidebars, the parties addressed those matters when the jury was absent from the courtroom. The court also utilized "runners" to deliver exhibits to the witness stand and to counsel's table.

In addition, the bailiffs substituted silver-colored handcuffs for the red ones provided by the county jail and covered the handcuffs and the leg shackles with matte black masking tape. Further, counsel's table was fitted with a black opaque cloth drape that effectively hid everything beneath the tabletop.

Finally, the trial court mitigated any possible prejudice by instructing the jury that "[t]he fact that physical restraints have been placed on the defendant is not evidence. Don't speculate about the reason. You must completely disregard

the circumstances in deciding the issues in this case. Don't consider it for any purpose or discuss it during your deliberations." We presume the jurors understood and followed this instruction. (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1415; *People v. Stevens* (2009) 47 Cal.4th 625, 641.)

[[*Evidence of Prior Conviction*

Appellant argues that the trial court committed reversible error by allowing the prosecutor to introduce evidence of appellant's prior conviction for assault in order to prove intent or motive in the present matter. (Evid. Code, § 1101, subd. (b).) We are not persuaded.

As previously discussed, appellant was convicted in 2004 of assault with the infliction of serious bodily injury. The conviction was the result of a plea agreement. The factual basis for the plea was that appellant was at the home of a third party when the victim, Robert Day, arrived and told the owner that appellant should leave "because of an earlier incident." When appellant discovered that Day wanted him to leave, he approached Day outside the residence and an altercation ensued. Appellant stabbed Day with a knife and then fled. Day suffered numerous stab wounds, including a punctured lung.

In offering this evidence, the prosecutor stated: "I need to prove that [appellant] intended to kill William Littrice. That's a specific intent crime. My argument would be especially [relevant] as it relates to that uncharged criminal act that [appellant] stabbed Robert Day with the same intent at that time. That is, he stabbed him in the head. He stabbed him in the vital organ, in the chest, and resulted in a punctured lung, stabbed him repeatedly. In this particular case . . . , [appellant] stabbed Mr. Littrice in the neck. A spot where had it been in a

7

slightly different location could very well have killed Mr. Littrice. He then tried to stab Mr. Littrice again but was separated from Mr. Littrice by another witness. For me that goes to intent. He's not trying to defend himself. Rather, he's intending to stab or kill the intended target."

The trial court found that the uncharged crime had some relevance "for the purpose of intent particularly" and was not unduly prejudicial under Evidence Code section 352. As a result, it allowed the prosecution to "go ahead and attempt to prove the uncharged criminal act[] . . . ."

Evidence Code section 1101 prohibits the admission of evidence of a defendant's prior uncharged misconduct to show he or she committed the current offense, but it allows such evidence to show, among other things, the defendant's identity or plan, or the defendant's state of mind, such as motive, knowledge or intent. (*Id.*, subds. (a) & (b).) Admissibility for these limited purposes depends on the similarity between the charged and uncharged conduct, and each purpose requires a different degree of similarity. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 401-402 (*Ewoldt*), superseded by statute on other grounds as stated in *People v. Britt* (2002) 104 Cal.App.4th 500, 505; *People v. Hendrix* (2013) 214 Cal.App.4th 216, 238.)

"The least degree of similarity is required to establish relevance on the issue of intent. [Citation.] For this purpose, the uncharged crimes need only be 'sufficiently similar [to the charged offenses] to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.' [Citations.]'" [Citation.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 371; see *Ewoldt*, *supra*, 7 Cal.4th at p. 402.)

8

Appellant claimed at trial that he stabbed Littrice in self-defense. He relies on *People v. Simon* (1986) 184 Cal.App.3d 125 (*Simon*), for the proposition that the two stabbing incidents at issue here are sufficiently similar only if the motivation for both offenses was the same, i.e., self-defense. In *Simon*, the defendant was charged with the murder of a man whom he shot in the defendant's former girlfriend's house. He claimed he shot the man in self-defense. (*Id.* at pp. 127-129.) At trial, the prosecution offered evidence of a prior incident in which the defendant pulled a gun on a drug dealer in his girlfriend's house. (*Id.* at pp. 128-129.) The defendant argued the prior incident was dissimilar because the defendant was motivated, on that occasion, to help his girlfriend kick her drug habit, while, in the current case, he was motivated by jealousy. (*Id.* at p. 130.) The Court of Appeal agreed that the earlier assault was admissible only if it had been committed with the same motive of jealousy. (*Id.* at pp. 129-132.)

Based on *Simon*, appellant contends the jury could only have considered evidence of his prior assault conviction if it found, as a preliminary fact, that the motive for that assault also was self-defense. The People respond that the evidence that appellant engaged in a similar unprovoked assault was relevant, regardless of whether appellant claimed self-defense in the prior case. They contend admissibility of the proffered evidence turns on whether it is relevant to a disputed issue, such as intent, and not on whether identical defenses are offered. We need not, however, resolve this issue because even if an error in admitting the evidence or in instructing the jury did occur, it was harmless. (See *People v. Thomas* (2011) 52 Cal.4th 336, 356 ["Any error in allowing the jury to consider evidence of [an uncharged assault]

9

was harmless"]; *People v. Foster* (2010) 50 Cal.4th 1301, 1333 ["We need not decide whether the prior crimes were sufficiently similar to the charged offenses to be relevant to the issue of identity, because any error in the court's instruction was harmless"].)

Here, the evidence supporting appellant's conviction for assault with personal use of a deadly weapon (§ 245, subd. (a)(1)) was overwhelming. His attack on Littrice was witnessed by Moore and Tyree. They testified that appellant approached Littrice, who was unarmed, and stabbed him in the neck with a knife without any provocation. Littrice corroborated their testimony. Based on these facts, it is not reasonably probable that the jury would have reached a result more favorable to appellant had the evidence of the prior assault been excluded or had there been any further instruction regarding the evidence. (See *People v. Thomas*, *supra*, 52 Cal.4th at p. 356; *People v. Foster*, *supra*, 50 Cal.4th at p. 1333.)]]

The judgment is affirmed.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

10

Rick S. Brown, Judge[*]
Superior Court County of Santa Barbara

_____


Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Kamala D. Harris, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul R. Roadarmel,  Supervising Deputy Attorney General, and David F. Glassman,  Deputy Attorney General, for Plaintiff and Respondent.

---

[*] (Retired Judge of the Santa Barbara Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)