Filed 8/18/23  P. v. Ranft CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STERLING PAUL RANFT,<br><br>    Defendant and Appellant. | 2d Crim. No. B321598<br>(Super. Ct. No. 21CR06283)<br>(Santa Barbara County) |

Sterling Paul Ranft appeals from the judgment after a jury convicted him of custodial possession of a weapon (Pen. Code,[1] § 4502, subd. (a)).[2]  The trial court subsequently found true allegations that Ranft suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), that his convictions were of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)), that he served a prior term in prison (*id.*, rule 4.421(b)(3)), that he

---

[1] Statutory references are to the Penal Code.

[2] Ranft also pleaded guilty to resisting arrest (§ 148, subd. (a)(1)).  That conviction is not at issue in this appeal.

was on parole when he possessed a weapon (*id.*, rule 4.421(b)(4)), and that his performance on parole was unsatisfactory (*id.*, rule 4.421(b)(5)). It sentenced him to eight years in state prison (the upper term of four years, doubled).

Ranft contends the judgment should be reversed because: (1) his *Faretta*[3] waiver was invalid, (2) he was restrained during trial, (3) the trial court misinstructed the jury, and (4) the errors, considered cumulatively, deprived him of due process. Ranft also contends the matter should be remanded for resentencing because: (5) his admission to the prior strike was invalid, and (6) the court should have applied the amendments set forth in Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) and struck the prior strike. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Santa Barbara County Sheriff's Deputy Anthony Ramirez was processing arrestees at the county jail's Inmate Receiving Center. When searching Ranft's bedroll for contraband, Deputy Ramirez noticed that a cup containing crunched-up paper felt heavy. Upon removing the paper, he found a five-inch piece of metal wrapped in fabric. It appeared to be a "shank." Ranft told Deputy Ramirez that he had found the shank in the dress-out area of the receiving center.

Deputy Ramirez notified Deputy Crystal Poquette that he had found a shank. Detective Poquette examined the item and believed it could be used to stab someone, or perhaps even kill them. She believed the item had been brought into the jail because it was made of metal that did not come from a bunk and the fabric it was wrapped in could not be found inside. Additionally, the pointed end of the shank had not been fully

---

[3] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

2

sharpened, which suggested it had been brought into jail in an inmate's rectum.

## DISCUSSION

### *Guilt phase issues*

#### *1. The* Faretta *waiver*

Ranft first contends the judgment should be reversed because his *Faretta* waiver was invalid. We disagree.

##### *a. Background*

At a December 2021 pretrial conference, Ranft said that he "wanted to go on [his] own or be presented with a different" attorney because of a breakdown in communication with appointed counsel. The trial court replied that trial was set for February 2022 and that if new counsel were appointed there was "going to be a setback." Ranft replied, "That's why my first option was to represent myself." The court then asked if Ranft would be ready for a February trial if he elected to represent himself. He said that he would.

At a hearing three weeks later, Ranft was adamant that he wanted to represent himself. He did not request a different attorney.

The trial court heard Ranft's *Faretta* motion the following week. At the hearing the court asked if Ranft understood how burdens of proof and defenses worked in a criminal trial. Ranft replied that he had "been through the trial process before." The court also delineated the potential perils of self-representation, including that Ranft would "not be able to appeal on the ground that [he] did not have a lawyer" if he were convicted. Ranft said that he understood. The court then asked Ranft if he wanted additional time to consider his decision to represent himself. Ranft responded that he just wanted to resolve the case so that

3

he could be placed on probation; he only raised the *Faretta* motion to get the process moving.

The trial court told Ranft that probation was not an option in his case. The court also told Ranft that he had the option of keeping current counsel. Ranft refused; he wanted no further delay. The court replied that he would not go to trial any sooner if he represented himself. Ranft said he understood, and reiterated his desire to do so. The court granted his request.

*b. Discussion*

A defendant has a constitutional right to represent themselves at trial. (*Faretta, supra*, 422 U.S. at p. 819.) The trial court must permit a defendant to do so if they make their request: (1) knowingly and intelligently (*id.* at p. 835), (2) unequivocally (*ibid.*), and (3) "within a reasonable time prior to the commencement of trial" (*People v. Windham* (1977) 19 Cal.3d 121, 128). To determine whether a *Faretta* waiver was valid, we review the entire record de novo (*People v. Marshall* (1997) 15 Cal.4th 1, 24) to determine whether it "demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case" (*People v. Bloom* (1989) 48 Cal.3d 1194, 1225 (*Bloom*)). The defendant bears the burden of showing the invalidity of their waiver. (*People v. Mellor* (1984) 161 Cal.App.3d 32, 37.)

Ranft has not borne his burden here. He first claims his *Faretta* waiver was invalid because the trial court granted his self-representation request without conducting a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. Such a hearing is required "when there is 'at least some clear indication by defendant,' either personally or through [their] current counsel, that [they] 'want[] a substitute attorney.' " (*People v.*

4

*Sanchez* (2011) 53 Cal.4th 80, 90.) A *Marsden* hearing is not required, however, if the defendant merely expresses dissatisfaction with counsel. (*People v. Burton* (1989) 48 Cal.3d 843, 855 (*Burton*).) The failure to conduct a required *Marsden* hearing can result in an invalid *Faretta* waiver. (See, e.g., *People v. Hill* (1983) 148 Cal.App.3d 744, 755-756; *People v. Cruz* (1978) 83 Cal.App.3d 308, 317-318.)

Here, there was no clear indication that Ranft wanted to substitute attorneys. At a pretrial conference, Ranft said that he "wanted to go on [his] own or be presented with a different" attorney. But when informed that substituting attorneys would likely delay trial, Ranft said that his "first option was to represent [him]self." Then, at subsequent hearings, Ranft reiterated his desire to represent himself several times. No *Marsden* hearing is required when a defendant repeatedly insists on representing themselves. (*Burton, supra*, 48 Cal.3d at p. 855; see also *People v. Mendoza* (2000) 24 Cal.4th 130, 156-157, superseded by statute on another point as stated in *People v. Brooks* (2017) 3 Cal.5th 1, 62, fn. 8.)

Moreover, even if Ranft did clearly indicate that he wanted to substitute attorneys, we would conclude that he abandoned his request. Ranft obliquely raised his desire to substitute attorneys once, but then never brought up the matter again. That constitutes the abandonment of any *Marsden* request. (*People v. Jones* (2012) 210 Cal.App.4th 355, 362.) Ranft's *Faretta* waiver was not invalid due to the lack of a *Marsden* hearing.

Alternatively, Ranft asserts his *Faretta* waiver was invalid because the trial court failed to inform him that he could not raise a claim of ineffective assistance of counsel on appeal if it permitted him to represent himself. But the court told Ranft that

5

he would "not be able to appeal on the ground that [he] did not have a lawyer" if it granted his *Faretta* motion and he were later convicted. And even if it hadn't, our Supreme Court has rejected Ranft's assertion. (*Bloom*, *supra*, 48 Cal.3d at p. 1225.) We do too. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Ranft's *Faretta* waiver was valid.

## 2. *The wrist restraint*

Ranft next contends the judgment should be reversed because the trial court ordered him to wear a wrist restraint during trial. We again disagree.

### a. *Background*

Prior to trial, county counsel moved to restrain Ranft in the courtroom. According to Deputy Poquette, Ranft had fought with other inmates in December 2021, had a shank in his bedroll in July 2021, refused to comply with a strip search and had to be sent to a more secure housing unit in August 2018, threatened other inmates with assault in March 2018, and refused to comply with instructions to be seated in court in June 2016. Based on these incidents, county counsel moved the trial court to order the use of a wrist restraint and leg shackles.

The trial court granted county counsel's motion as to the wrist restraint. It instructed all parties to remain seated during jury selection and trial to hide the restraint. The prosecutor also noted there would be black fabric around the counsel table "so the jury [wouldn't] be able to see" it.

Ranft later said that he "[j]ust wanted to comment on the prejudicial nature of the handcuffs, just get it on the record." The trial court said that jurors could not see the wrist restraint if Ranft remained seated and kept his hand in his lap. He could

6

also use his jacket to cover the restraint.  The court warned him when the jacket possibly did not.

The prosecutor asked whether the trial court was going to instruct jurors pursuant to CALCRIM No. 204.  Ranft said that he did not want the instruction.  The prosecutor replied that she had nevertheless included it in the jury packet because she had seen Ranft's wrist restraint during jury selection.  Jurors may also have seen the restraint when Ranft scratched his face.  The court said that the matter was up to Ranft since no juror had said they could see the restraint, though some had said that they had seen his feet.  Ranft confirmed that jurors had seen his sandals, not the restraint.  He reiterated that he did not want the court to instruct the jury with CALCRIM No. 204.

### *b.  Discussion*

A " 'trial court has broad power to maintain courtroom security and orderly proceedings.' " (*People v. Stevens* (2009) 47 Cal.4th 625, 632.)  But "extraordinary security practices" like wrist restraints "carry an inordinate risk of infringing [on] a criminal defendant's right to a fair trial" because they "may erode the presumption of innocence." (*Ibid.*)  Such "exceptional practices must be justified by a particularized showing of manifest need sufficient to overcome the substantial risk of prejudice they pose." (*Ibid.*)

A "manifest need can be made with ' "evidence that the defendant has threatened jail deputies, possessed weapons in custody, threatened or assaulted other inmates, and/or engaged in violent outbursts in court." ' " (*People v. Young* (2019) 7 Cal.5th 905, 934 (*Young*).)  A manifest need can also be made by showing that the " 'defendant poses a safety risk[] [or] a flight risk, or [that they are] likely to disrupt the proceedings or

7

otherwise engage in nonconforming behavior.' " (*People v. Virgil* (2011) 51 Cal.4th 1210, 1270.) If the trial court determines that such a need exists, the restraints ordered " 'should be as unobtrusive as possible, although as effective as necessary under the circumstances.' " (*People v. Mar* (2002) 28 Cal.4th 1201, 1217.) We review for abuse of discretion. (*Young*, at p. 934.)

There was no abuse of discretion here. Ranft accrued several disciplinary infractions while in custody in the years prior to trial. He fought with other inmates, had a shank in his bedroll, refused to comply with deputies' commands, and threatened other inmates. He had also previously disrupted trial proceedings. Ordering him to wear a wrist restraint was accordingly proper. (*Young*, *supra*, 7 Cal.5th at pp. 934-935 [restraints appropriate where defendant had " 'numerous problems while in custody' "]; *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 388-393 (*Bryant, Smith and Wheeler*) [restraints appropriate where defendants previously disrupted court proceedings].)

"The trial court [also] imposed the least[-]intrusive means of restraint to accomplish its goal of maintaining courtroom safety." (*People v. Billie* (2017) 10 Cal.App.5th 434, 438.) Ranft had one hand free throughout trial. His restrained wrist was kept in his lap, under a jacket, hidden by a black table skirt. And all parties remained seated throughout trial. Such mitigation measures rendered Ranft's wrist restraint as unobtrusive as possible. (*Id.* at pp. 438-439.)

Ranft complains that the trial court did not hold a hearing on the motion to restrain him and instead left the decision to county counsel. But no formal hearing was required. (*Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 391.) And "[t]he court

here was clearly aware of its obligation to make its own determination on the need for restraints." (*Ibid.*)  It discussed the matter on no fewer than five occasions, indicated that it had a copy of county counsel's motion, and ensured that all parties did too.  We presume the court considered the evidence attached to the motion when granting it.  (*People v. Weaver* (2001) 26 Cal.4th 876, 919.)  That the court rejected the request for leg shackles, took pains to ensure that Ranft's wrist restraint was as hidden as possible, and gave him the option of telling jurors that they could not infer guilt if they saw it reinforces our presumption that the court understood the standards for granting county counsel's motion.  (Cf. *People v. Jones* (2017) 3 Cal.5th 583, 616 [appellate court presumes trial court knows and properly applies the law].)  There was no error.

Any error also would have been harmless.  Courts "have consistently found any unjustified or unadmonished [restraint] harmless where there was no evidence it was seen by the jury." (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 583-584; see also *People v. Anderson* (2001) 25 Cal.4th 543, 596 [compiling cases].)  This is because "[t]he potential effect on the presumption of innocence is eliminated if the jury does not see the" restraint.  (*People v. Jackson* (1993) 14 Cal.App.4th 1818, 1829.)  Here, Ranft points to no evidence showing that any juror was aware he was wearing a wrist restraint.  Instead, he speculates that jurors may have seen the restraint because the trial court and prosecutor each briefly saw it.  Speculation is not evidence.  (*People v. Waidla* (2000) 22 Cal.4th 690, 735.)  Any unjustified restraint was harmless.

### 3.  Jury instructions

Next, Ranft contends the trial court should have sua sponte instructed the jury on attempted possession of a weapon in jail in

9

addition to instructing on actual possession. But a court has such an instructional duty only if there is substantial evidence the defendant is guilty of the attempted crime. (*People v. Strunk* (1995) 31 Cal.App.4th 265, 271 (*Strunk*).) No such duty arises where, as here, there is no substantial evidence that the defendant did not possess a weapon. (*Id.* at p. 272.) Because Deputy Ramirez located a shank inside Ranft's bedroll, an instruction on attempted possession was not required.

Ranft attempts to salvage his instructional error claim by arguing that jurors could have found him guilty of attempted possession of a weapon because Deputy Ramirez and Deputy Poquette both testified the shank was not sharp. To him, this purported dullness would have permitted jurors to conclude either that the shank was not "capable of ready use as a stabbing weapon" or that it could not "inflict great bodily injury or death" and was thus not a dirk or dagger. (See § 16470 [defining dirk or dagger].) But at trial, Ranft never argued that the shank's dullness prevented it from being a dirk or dagger. He cannot raise this argument for the first time on appeal. (*People v. Powell* (2018) 6 Cal.5th 136, 169.)

Moreover, Ranft's argument ignores Deputy Poquette's testimony that the shank *could* be used to stab or even kill someone—despite not being fully sharpened. It ignores the deputy's testimony that she had seen duller items be used as stabbing weapons. And it ignores the jury's finding that the shank was, in fact, a dirk or dagger. (See *People v. Belloso* (2019) 42 Cal.App.5th 647, 653 [whether instrument a dirk or dagger is a factual question for the jury].) There was not substantial evidence that Ranft merely attempted to possess a dirk or dagger. (*Strunk*, *supra*, 31 Cal.App.4th at p. 271; see *People v. Breverman*

10

(1998) 19 Cal.4th 142, 162 ["existence of '*any* evidence, no matter how weak' will not justify instructions on" attempted offense].) The trial court was thus not required to sua sponte instruct the jury on attempted possession of a weapon in jail.

### 4. *Cumulative prejudice*

Finally, Ranft contends the judgment should be reversed because the errors that occurred during the proceedings below, considered cumulatively, violated his due process right to a fair trial. Because we reject all Ranft's claims of error, he cannot show cumulative prejudice. (*People v. Jablonski* (2006) 37 Cal.4th 774, 810.)

### *Sentencing issues*

### 1. *Prior strike admission*

Ranft first challenges his sentence by claiming that his admission of a prior strike conviction was invalid because he was not informed of, and thus did not waive, the privilege against self-incrimination and the right to confront his accusers. We are not persuaded.

"[B]efore a [trial] court accepts [a defendant's] admission that [they have] suffered prior felony convictions, express and specific admonitions as to the constitutional rights waived by [the] admission" are required. (*In re Yurko* (1974) 10 Cal.3d 857, 863.) The requisite admonitions include that the admission waives the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers. (*Id.* at p. 863, fn. 5.) If these admonitions are not provided, the admission is nevertheless valid so long as the record affirmatively discloses that it was knowing and voluntary under the totality of the circumstances. (*People v. Farwell* (2018) 5 Cal.5th 295, 303-304.)

11

The trial court here did not ensure that Ranft received the requisite admonitions. While the jury deliberated, the court asked Ranft how he wanted to proceed on the prior strike allegation. Ranft said that he planned to admit the allegation. The prosecutor took Ranft's admission: "So, Mr. Ranft, you have a right to have a jury trial on your strike prior offense, which is that you were convicted of a violation of Penal Code [s]ection 245, [subdivision (a)(2)], in Santa Barbara Superior Court case number 1465394 on August 5, 2016. [¶] Do you admit or deny that that offense is a serious felony within the meaning of Penal Code [s]ection 667, [subdivisions (d) and (e)]?" Ranft admitted the offense. The prosecutor then confirmed that Ranft wanted to "waive [his] right to have a trial on that prior and just admit it." Ranft said that he did.

At no time during the colloquy did the prosecutor explain that, by admitting his prior conviction, Ranft was waiving the privilege against self-incrimination and the right to confront his accusers. Despite the lack of admonitions, however, we conclude that Ranft's admission was valid. When Ranft executed his *Faretta* waiver prior to trial, he confirmed that he understood his constitutional rights, including the privilege against self-incrimination and the right to confront his accusers. He reiterated that understanding when the trial court accepted the *Faretta* waiver. He later confirmed he was waiving those rights when he executed the form in which he pleaded guilty to resisting arrest and when the court accepted his plea. These factors weigh in favor of a knowing and voluntary waiver. (See, e.g., *People v. Forrest* (1990) 221 Cal.App.3d 675, 678–679 [prior conviction admission valid where defendant advised of rights during plea colloquy earlier in proceeding].) Additionally, this was not

12

Ranft's first brush with the criminal justice system; he said that he had "been through the trial process before." This is also relevant to whether Ranft knowingly waived his constitutional rights. (*People v. Mosby* (2004) 33 Cal.4th 353, 365.) The record here affirmatively discloses that Ranft's waiver was valid under the totality of the circumstances.

### 2. *Senate Bill No. 81*

Finally, Ranft contends the trial court should have struck his prior strike pursuant to section 1385, as amended by Senate Bill No. 81 (2021-2022 Reg. Sess.). But Senate Bill No. 81's amendments to section 1385 took effect on January 1, 2022. (*People v. Burke* (2023) 89 Cal.App.5th 237, 242 (*Burke*).) Ranft was sentenced the following June. Had Ranft wanted the court to apply the provisions of Senate Bill No. 81 at sentencing, he should have asked it to do so. Because he did not, his contention is forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 351.)

It also lacks merit. "Senate Bill No. 81 . . . amended section 1385 to add specific mitigating factors the trial court must consider when deciding whether to strike *enhancements* from a defendant's sentence." (*Burke*, *supra*, 89 Cal.App.5th at pp. 242-243, italics added.) "The term 'enhancement' has a well-established technical meaning in California law"; it is " ' "an additional term of imprisonment added to the base term." ' " (*Id.* at p. 243.) "It is equally well established that the Three Strikes law is . . . an alternative sentencing scheme," not an enhancement. (*Ibid.*) As such, Senate Bill No. 81's amendments to section 1385 do not apply to sentences imposed under the Three Strikes law. (*Burke*, at pp. 243-244.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.

CODY, J.

Pauline Maxwell, Judge

Superior Court County of Santa Barbara

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.